

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2004

# Woldemariam v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4518

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Woldemariam v. Atty Gen USA" (2004). *2004 Decisions.* Paper 210.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/210

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4518
_____

NIGHISTI WOLDERMARIAM;
ISAAC GHEBRETNSAE BELETSE,

Petitioners,

v.

JOHN ASHCROFT,
Attorney General of the United States;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,

Respondents
_____

On Petition for Review of An Order
from the Board of Immigration Appeals

(BIA Nos. A78-514-483 & A78-514-478)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2004
_____

Before: ROTH, BARRY, and GARTH, Circuit Judges

(Opinion Filed:  October 19, 2004)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

Nighisti Woldermariam and her husband, Isaac Ghebretnsae Beletse, petition for review of an order of the Board of Immigration Appeals ("BIA"). That order affirmed the decision of the Immigration Judge ("IJ"), which had denied petitioners' applications for asylum, withholding of removal, and for protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We will deny the Petition for Review.

**I.**

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. It is sufficient to note that this Petition originates from the ongoing conflict between Ethiopia and Eritrea, the root cause of which was Eritrea's 30-year struggle for independence, finally achieved in the early 1990s. In May 1998, Ethiopia and Eritrea again went to war, and Ethiopia began persecuting its citizens of Eritrean descent by revoking business licenses, dismissing them from government jobs, and deporting them. Among those deported by Ethiopia were Woldermariam and Beletse, as well as their two children and Beletse's mother, based on their Eritrean descent.

Upon arriving in Eritrea, the Eritrean authorities detained Woldermariam for two hours because she was unable to establish her Eritrean origin. Only after her husband and mother-in-law also testified to her Eritrean descent did the Eritrean authorities allow her to rejoin her family. Woldermariam has testified, moreover, that she endured further

hostility while living in Eritrea. Specifically, because she was from the Tigray region in Ethiopia, the Eritreans viewed her with suspicion and hatred, thus creating an uncomfortable and precarious situation. The real source of friction, though, between Woldermariam and Beletse and the Eritrean authorities was Beletse's refusal to report for duty upon being conscripted into the Eritrean military.

When Beletse failed to report for duty, allegedly because he considered the war against Ethiopia unjust, the Eritrean police, on three separate occasions, came to his home in search of him. During the last of the three visits, the police forced their way into the home, and when Woldermariam asserted that she had no knowledge of her husband's whereabouts, the police beat her with their fists and kicked her. After this incident, Woldermariam and Beletse decided to flee Eritrea, leaving their children behind to live with Beletse's mother. They first settled in Sudan for four months and then Nairobi for fifteen months before finally entering the United States on or about April 3, 2001.

Because Woldermariam and Beletse entered the United States without valid entry documents, the INS filed Notices to Appear ("NTAs") on April 13, 2001, alleging that Woldermariam and Beletse were natives and citizens of Eritrea and charging them with being subject to removal under 8 U.S.C. § 1182(a)(7)(A). Woldermariam and Beletse admitted the allegations in the NTAs and conceded removability, but requested asylum, withholding of removal and protection under the CAT.[1]

---

[1]Petitioners' nationality at birth and citizenship has not been determined, notwithstanding the admitted allegations in the NTAs. The confusion stems from petitioners' initial and revised

At the merits hearing on December 27, 2002, the IJ, in an oral decision, found that Woldermariam and Beletse were not eligible for asylum, withholding of removal or protection under the CAT. Thereafter, Woldermariam and Beletse appealed to the BIA. The BIA first found that they had failed to establish past persecution, a well-founded fear of future persecution, or a clear probability of persecution or torture upon their return to Eritrea. In particular, the BIA, accepting as true both Beletse's forced conscription and Woldermariam's beating by the Eritrean authorities, determined that neither event amounted to persecution and, in any event, had not been based on a protected ground. The BIA also found that Woldermariam failed to establish persecution based on the mere fact that her Eritrean neighbors viewed her with suspicion due to her Tigray ethnicity. Further, while the background materials described ethnic tensions and incidents of violence toward Ethiopian deportees during the Eritrean-Ethiopian war, the BIA found that Woldermariam and Beletse failed to establish that a reasonable person in such circumstances would fear persecution.

Additionally, in response to Woldermariam and Beletse's argument that the IJ erroneously concluded that they were citizens of Eritrea, thus ignoring their request for protection from Ethiopia, the BIA noted that they had, at best, only ambiguously raised a claim for protection from Ethiopia. The BIA then concluded that, even if they properly raised such a claim, it would deny their requests for asylum, withholding of removal, and

_____

asylum applications, which state that Beletse is a native of Ethiopia and a citizen of Eritrea and Woldermariam is a native and citizen of Ethiopia.

-4-

relief under the CAT, for involuntary deportation, alone, does not rise to the level of persecution, nor did the background materials establish a reasonable possibility of persecution or torture upon their return to Ethiopia.

The BIA, upon taking administrative notice of the 2002 *Country Report*, observed that the war between Ethiopia and Eritrea ended in June 2000, and Ethiopia had ceased their policy of detention and forced exile for Ethiopian citizens of Eritrean descent. 2002 *Country Report* at 1-2, 9, 18-19, available at http://www.state.gov/g/drl/rls/hrrpt/2002/18203.htm. Consequently, the BIA dismissed their appeal and ordered them removed to Eritrea or, in the alternative, to Ethiopia. This Petition for Review followed.

**II**.

Section 208(b) of the INA, 8 U.S.C. § 1158(b), provides that the Attorney General has discretion to grant asylum to refugees. The INA defines a *refugee* as a person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of establishing that he satisfies these requirements. 8 C.F.R. § 208.13(a) (2003).

To successfully petition for *withholding of removal* under 8 U.S.C. § 1231(b)(3)(A), an alien must "show that if returned to his country, it is more likely than

not that the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Amanfi v. Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003); *see also* 8 U.S.C. § 1231(b)(3)(A). Inasmuch as establishing eligibility for withholding of removal requires a showing of a "clear probability of persecution," the standard for withholding of removal is more stringent than the standard for asylum. *Li Wu Lin v. INS,* 238 F.3d 239, 244 (3d Cir. 2001).

To qualify for relief under the United Nations *CAT*, and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (1984), an applicant must prove that he is more likely than not to be tortured in the country of removal, a standard which is also more stringent than the standard for asylum. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 591 n.2 (3d Cir. 2003) (citing 8 C.F.R. §§ 208.16(c)(2) & (4)).

Where, as here, the BIA did not expressly adopt or defer to the IJ's findings, we review only the decision of the BIA. *Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). Under the governing law, we must ascertain whether the BIA's factual determinations are supported by substantial evidence. *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir. 1998). In *Abdille v. Ashcroft*, we held that "'persecution' and 'well-founded fear of persecution' are all findings of fact that we review under the deferential substantial evidence standard" and the BIA's findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it." 242 F.3d 477, 483-84

(3d Cir. 2001). We will reverse "only if a reasonable fact-finder would have to conclude that the requisite fear of persecution existed." *Id.* at 484 (citation omitted).

### III.

Applying the deferential substantial evidence standard to this Petition, we conclude that Woldermariam and Beletse have failed to demonstrate that "any reasonable adjudicator would be compelled to conclude" that they were entitled to asylum. 8 U.S.C. § 1252(b)(4)(B).[2] Substantial evidence supports the BIA's determinations that Woldermariam and Beletse failed to establish either past persecution or a well-founded fear of future persecution.

### A.    Past Persecution

To establish eligibility for asylum based on past persecution, a petitioner must prove not only that he or she has actually suffered persecution, but also that such persecution was on account of one of the statutorily protected grounds. *Abdulrahman v. Ashcroft,* 330 F.3d at 592; *Lukwago v. Ashcroft*, 329 F.3d 157, 167-68 (3d Cir. 2003). We have previously held that persecution is an "extreme concept" that "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993); *Lukwago*, 329 F.3d at

---

[2]Because the standards for prevailing on a withholding of removal claim and a request for relief under the Convention are more stringent than the standard applicable to an asylum application, denial of petitioners' asylum applications by definition compels denial of petitioners' withholding of removal and Convention relief claims. *See Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003).

168-69. Rather, we have defined persecution as including "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." *Lukwago,* 329 F.3d at 168 (quoting *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001)). For the reasons that follow, the factual events upon which Woldermariam and Beletse rely in arguing for asylum do not rise to the level of persecution.

First, insofar as Beletse claims persecution based upon his forced conscription into the Eritrean military, the BIA properly rejected that claim. We have previously recognized the general notion "'that a sovereign nation enjoys the right to enforce its laws of conscription, and that penalties for evasion are not considered persecution.'" *Lukwago*, 329 F.3d at 169-70 (quoting *M.A. v. United States INS*, 899 F.2d 304, 312 (4th Cir.1990) (en banc )).

Second, the purported beating of Woldermariam by the Eritrean authorities, a solitary incident causing no serious injuries, does not evince conduct so severe that it constitutes a real threat to life or freedom.[3] Even assuming that the beating was severe enough to constitute persecution, Woldermariam has nonetheless failed to show that such beating was on account of a protected ground under the INA (8 U.S.C. § 1101(a)(42)(A)), and was not based on the mere fact that the Eritrean authorities thought she was deliberately lying to protect her husband, as determined by the BIA. That distinction is

---

[3]Petitioners attempt to introduce "new information" indicating that the police not only beat Woldermariam, but raped her as well. We will not consider this new information because it was not considered by the BIA. *See Alleyne v. INS*, 879 F.2d 1177, 1182 (3d Cir.1989) (noting that this Court may not consider particular issues not raised in an appeal to the Board).

crucial here, and while Woldermariam argues that "it can safely be assumed that at least a partial motive for here [sic] physical and psychological abuse was due to her ethnic background and as a result of a political opinion imputed to her as a result of her association with her husband," mere conjecture will not suffice. Pet.'s Br. at 31. The administrative record is devoid of any evidence tending to establish the requisite nexus between the beating and a protected ground set forth in the statute. Because forced conscription, without more, is not persecution, the ill-treatment Woldermariam received based on her husband's evasion of the conscription process cannot be held to constitute persecution.

Third, the involuntary deportation by the Ethiopian authorities of Woldermariam and Beletse does not constitute persecution. Such involuntary deportation by Ethiopia to Eritrea (a country which previously had been part of Ethiopia and the place where both Beletse and Woldermariam's father were from) during a time of war between Eritrea and Ethiopia, while perhaps unfair or unjustified, does not, in our view, come within the narrow parameters of conduct so extreme as to constitute persecution. *See Fatin*, 12 F.3d at 1240.

Finally, the other events cited by Woldermariam–the temporary detainment upon arrival in Eritrea and the hostile social environment–are not sufficiently serious to rise beyond the level of harassment. As such, we conclude that Woldermariam and Beletse have failed to establish past persecution.

**B.     Well-Founded Fear of Persecution[4]**

An applicant who fails to demonstrate past persecution may still qualify for asylum by showing that he or she has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion if returned to his or her native country.  The term "well-founded fear has both a subjective and objective component."  *Abdille*, 242 F.3d at 495-96.  An applicant must "show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility."  *Id.* at 496 (citation omitted).  As in *Abdille*, here there is no challenge to petitioners' subjective fear of persecution.  However, the question remains whether that fear is objectively reasonable.  On appeal, Woldermariam and Beletse have the burden of showing that the record would compel a reasonable adjudicator to find that they have a well-founded fear of future persecution based on an enumerated statutory ground.

The BIA, citing to the evidence of country conditions in the record, concluded that Woldermariam and Beletse did not establish that they have a well-founded fear of future persecution, finding that a reasonable person in their circumstances would not fear

---

[4]Petitioners do not appear to challenge the BIA's finding that they failed to establish a well-founded fear of future persecution if they are removed to Ethiopia, as opposed to Eritrea. Issues not raised and argued in an opening brief are deemed abandoned and waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).  In any event, relying on the more recent *Country Report* from 2002, the BIA noted that Ethiopia has ceased its practice of involuntary deportation of Ethiopians of Eritrean descent.  We agree that this defeats any claim of future persecution based upon removal to Ethiopia.

persecution. Woldermariam and Beletse have not identified any record evidence that would compel a reversal of this finding.

Beletse contends that he will suffer disproportionate punishment for evading the conscription process, thus establishing a well-founded fear of future persecution. It is true that in certain situations where the refusal to serve in the military results not in normal draft evasion penalties, but rather in disproportionately severe punishment, such punishment might constitute persecution. This case, however, does not present one of those situations.

Beletse's fear of disproportionately severe punishment lacks evidentiary support. At the very least, the record evidence does not require the abandonment of the general principle, applied by the BIA, that forced military conscription does not constitute persecution.[5] Similarly, Woldermariam's objective basis for fear of future persecution rests on her past experience of physical abuse and the uncomfortable social environment she experienced in Eritrea. The BIA, however, concluded that such conduct does not constitute persecution. Accordingly, Woldermariam's reliance on that conduct to establish a well-founded fear of future persecution is unavailing.

We therefore hold that the BIA's conclusions that Woldermariam and Beletse failed to establish past persecution or a well-founded fear of future persecution are

---

[5]Beletse bases this claim, in part, on his purported submission of a 2004 document which purportedly indicates that "those who flee the conscription process may be jailed or even disappeared [sic]." Pet.'s Br. at 38. As this document was not part of the record reviewed by the BIA, we do not consider it. *See* 8 U.S.C. § 1252(b)(4)(A).

supported by substantial evidence.

We will DENY the Petition for Review of the BIA's decision.