

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2005

# Voci v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-1807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Voci v. Atty Gen USA" (2005). *2005 Decisions.* Paper 927.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/927

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-1807

ALKET VOCI,

Petitioner

v.

ALBERTO GONZALES[*], Attorney General of the United
States,

Respondent

On petition for review of a final order
of the Board of Immigration Appeals
File No: A79-098-188
_____

Argued May 5, 2005

Before: MCKEE, SMITH, and VAN ANTWERPEN, *Circuit
Judges*

_____

[*]Attorney General Gonzales has been substituted as
respondent pursuant to Fed. R. App. P. 43(c).

(Filed: June 6, 2005 )

COUNSEL:  Mark A. Goldstein, Esq. (Argued)
Goldstein & Associates
The Gulf Tower, Suite 2330
707 Grant Street
Pittsburgh, PA 15219
*Attorney for Petitioner*

Peter D. Keisler Esq., Assistant Attorney
 General, Civil Division
Christopher C. Fuller, Esq.
Dennis J. Dimsey, Esq.
Lisa Wilson Edwards, Esq. (Argued)
U.S. Department of Justice
Ben Franklin Station
PO Box 14403
Washington, D.C.  20044-4403
*Attorneys for Respondent*

————————————————

OPINION OF THE COURT
————————————————

SMITH, *Circuit Judge*.

2

Appellant Alket Voci, a native of Albania, appeals a decision of the Board of Immigration Appeals ("BIA"), in which the BIA affirmed the Immigration Judge's ("IJ's") denial of Voci's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1]  The BIA rejected the IJ's determination that Voci lacked credibility, but agreed nonetheless that Voci had failed to demonstrate eligibility for asylum or for other relief.  Because Voci's testimony has been accepted by the BIA as credible, we hold that the BIA erred in determining that the incidents of police mistreatment described by Voci did not rise to the level of persecution under the Immigration and Nationality Act ("INA").  While we take no position concerning whether Voci will ultimately be entitled to the relief he seeks, the absence of analysis in the BIA's decision requires remand to the BIA, in order to permit the BIA explicitly to address the issues implicated by Voci's application for asylum.  In addition, if

---

[1]Voci has only presented substantive argument in support of his asylum claim, and only sought review of his asylum claim in his Notice of Appeal.  Thus, issues concerning withholding of removal and protection under the CAT have essentially been waived.  *See Kopec v. Tate*, 361 F.3d 772, 775 n.5 (3d Cir. 2004) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court") (quoting *Laborer's Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

upon remand Voci is able to establish that he suffered past persecution, it may be appropriate for the agency to address whether the government has shown that conditions in Albania have changed, such that Voci no longer has a reasonable fear of facing persecution if he were to return.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Voci's Testimony

Voci testified extensively concerning his background and family history in Albania. While Voci discussed various forms of mistreatment that his grandfather experienced under the Communist regime, these issues have little bearing on Voci's eligibility for asylum. With respect to his own persecution, Voci testified that in 1990 he became involved in the "democracy movement" that was taking hold in Albania. Voci indicated that he and other students at his high school, along with four professors, began holding meetings to discuss ways in which they could seek democratic reform. Voci indicated that the movement grew over time, and on February 20, 1991, a large protest rally was held in Korca, Albania. At this rally, protesters pulled down a large statue of Enver Hoxha, a former Communist Prime Minister of Albania. Voci testified that he was beaten by police officers at this protest, and he suffered cuts which required stitches, ultimately resulting in a lengthy hospital stay when his wounds became infected.

4

Voci testified that during the early 1990s, as the Democratic Party gained power and influence, he and other activists received a number of anonymous threatening letters warning them to cease their political activities. Voci also indicated that from 1990 through 1994, the police repeatedly came to his home searching for him, and they threatened his mother with harm if Voci did not cease his political activities. Voci explained that the police had videotaped the February 20, 1991, protest rally in Korca, and by reviewing these videotapes they identified Voci as one of the leaders of the rally. Along with the visits to his home, Voci also indicated that on several occasions during this same period the police came to his school looking for him, and that on these occasions Voci managed to get out of the school building without being caught.

The Democratic Party won elections in 1994, but according to Voci this did not end his persecution by the police. Voci indicated that in the years leading up to 1997, when the Socialist Party regained power, he was beaten up on many occasions by the police. Voci testified that seven of these beatings were severe, resulting in bleeding and scars. Three of these beatings occurred in connection with demonstrations in which Voci participated, and four occurred on occasions when the police accosted Voci on a street or alleyway as he walked through town. On one occasion, the police beat Voci with the blunt end of a gun, breaking his knee and causing Voci to spend several weeks in the hospital.

Voci testified that the Socialist Party regained power in 1997, and that its leadership was comprised of former Communist Party officials operating under a new name. Voci stated that he continued to face persecution after the Socialists regained power in 1997, culminating in a 1998 incident in which the police came to his parents' house, destroyed a number of the family's belongings, and beat Voci, his mother, and his sister. Voci also explained that during the mid to late-1990s he faced police harassment in connection with a restaurant that he operated with a friend and fellow Democratic Party activist. Police would come to the restaurant, harass and threaten patrons, break glasses and windows, and generally disrupt the business. Voci indicated that although the men who beat him and attacked his restaurant were often dressed in plain clothes, he recognized them as local police officers. Voci indicated that as a result of the persecution he faced, he attempted to relocate to a different part of Albania to stay with his uncle. This arrangement was only temporary, however, and he eventually fled Albania and came to the United States, arriving on March 14, 2001.[2]

---

[2]Voci also presented corroborating testimony from his sister, Ingrid Lama, and his former Albanian business partner, Ilir Drenesku. Lama is now a lawful permanent resident, a benefit she obtained as a result of the U.S. government's "diversity lottery" for immigrants seeking permanent resident status. Drenesku, like Voci, came to the U.S. using fake documents, and is an applicant for asylum.

## B. The IJ's Opinion

At the conclusion of Voci's June 24, 2002, hearing, the IJ stated that he would deny Voci's petition for relief. The IJ memorialized his findings and rationale in a separate oral decision and order. The IJ indicated that he did not view Voci's testimony as credible, and concluded as well that "nothing the respondent has testified to amounts to persecution in the considered opinion of the Court." The IJ noted that "the Communists have been gone from Albania since 1991 and [] there is absolutely no evidence that the Socialists have persecuted the respondent prior to his coming to the United States and absolutely no proof that he is going to be persecuted again if he returns to his country." The IJ also stated that Voci had failed to prove his various allegations "to this Court's satisfaction insofar as he has not submitted any supporting documentation."

The IJ went on to discuss country conditions in Albania, noting that the State Department reports contained in the record reflected favorably on the political climate in Albania. Based upon these materials, the IJ stated:

> Assuming arguendo that the respondent had indeed proven to the Court that he had been persecuted before the fall of communism and after the Socialists had taken power in Albania, the Court would nonetheless deny his instant application under 8 C.F.R. 208.13 insofar as

7

based on the State Department Reports the Court finds that there has been a fundamental change in the circumstances in Albania such to the effect that the respondent would no longer have a well-founded fear of persecution in his country if he were indeed returned to Albania.

## C.    The BIA's Opinion

Voci appealed the IJ's denial of his petition to the BIA, and on February 25, 2004, the BIA issued a one-page opinion dismissing Voci's appeal. The BIA's opinion states:

The Immigration Judge's decision dated June 24, 2002, accurately sets forth the facts asserted by the respondent in support of his claim for relief from removal. While we do not agree with the Immigration Judge's adverse credibility finding, we agree that the respondent has not demonstrated eligibility for asylum and also affirm the Immigration Judge's determination that the respondent has failed to establish grounds for granting the other forms of relief requested. In sum, the respondent has not demonstrated that he has suffered past persecution in Albania. Nor has he demonstrated a well-founded fear of persecution based on a protected ground under the Act were he to return to Albania. Likewise, the respondent has not established that it is more likely than not that he would be persecuted or tortured upon return to Albania.

8

We note that the respondent contends on appeal that the manner in which the Immigration Judge conducted the hearing, as well as the Immigration Judge's attitude toward him, deprived him of his right to a fair hearing. A review of the hearing transcript does not reveal, however, that the respondent suffered any prejudice. Inasmuch as we are in agreement with the Immigration Judge's decision, we affirm his decision based upon and for the reasons set forth herein. Accordingly, the respondent's appeal is dismissed.

(internal citations omitted).

## II. JURISDICTION

We have jurisdiction over an appeal from a final order of the BIA affirming a decision of the IJ to deny an alien's asylum application. 8 U.S.C. § 1252(a)(1); *see Berishaj v. Ashcroft*, 378 F.3d 314, 316 (3d Cir. 2004). In this case, although the BIA agreed with the IJ's decision to deny relief, it did not adopt or defer to the findings of the IJ. Instead, it expressed disagreement with the IJ's adverse credibility finding, but stated in a conclusory fashion that Voci had failed to show that he suffered past persecution in Albania. In such cases the final order we review is the decision of the BIA, not the decision of the IJ. *See Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir. 2003) ("The final order we normally review is the decision of the BIA, unless the BIA defers to the IJ's findings"); *Abdulai v. Ashcroft*,

9

239 F.3d 542, 549 (3d Cir. 2001) ("Congress has granted us power to review only 'final orders of removal.' Because an alien facing removal may appeal to the BIA as of right, and because the BIA has the power to conduct a de novo review of IJ decisions, there is no 'final order' until the BIA acts. Accordingly, we now expressly hold that the 'final order' we review is that of the BIA.") (citations omitted).

We recognize that in some instances, we review both the decisions of the IJ and the BIA. However, because our jurisdiction is restricted to reviewing "final orders of removal," this approach is meant to be the exception rather than the rule. *See Abdulai*, 239 F.3d at 545 ("We begin by clarifying that, absent *special circumstances* not present here, we review only decisions by the BIA and not those by immigration judges") (emphasis added). When first addressing this issue in *Abdulai*, we characterized situations in which the IJ's decision would be reviewed as those in which the BIA "expressly adopted [a] portion of the IJ's opinion" or "announced that it was deferring" to the IJ's findings. *See id.* at 549 n.2. Our subsequent cases have followed this approach. *See, e.g., Korytnyuk v. Ashcroft*, 396 F.3d 272, 286-87 (3d Cir. 2005) (analyzing BIA's use of passive voice to conclude that BIA had adopted specific factual finding made by IJ); *Chen v. Ashcroft*, 376 F.3d 215, 221-22 (3d Cir. 2004) (where BIA's opinion listed flaws in applicant's testimony, and stated that "for those reasons *and others cited in the Immigration Judge's decision*, the Immigration Judge correctly denied the respondent's application," court would

10

review both decisions) (emphasis added); *Xie v. Ashcroft*, 359 F.3d 239, 242, 246 n.9 (3d Cir. 2004) (reviewing both decisions where BIA stated that it was giving "significant weight" to IJ's adverse credibility finding, and disclaiming reliance on IJ's "demeanor" analysis where applicant's demeanor was not referenced in BIA opinion); *Miah*, 346 F.3d at 439 (explaining need to review both decisions where BIA rejected IJ's adverse credibility finding, and explicitly adopted IJ's corroboration analysis, noting that issues were intertwined because IJ's credibility findings influenced IJ's views concerning necessity of corroboration).

In sum, the cases in which we have reviewed both decisions have all involved situations in which the language of the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and fact-finding in support of the BIA's conclusions. Here, in contrast, the BIA expressed disagreement with the IJ's adverse credibility finding, and did not specifically reference or adopt other portions of the IJ's analysis. In agreeing with the decision reached by the IJ, the BIA stated that it was doing so "based upon and for the reasons set forth *herein.*" A1:2 (emphasis added). In this situation, we must restrict our review to the question of whether the underlying record provides substantial evidence for the BIA's conclusions. As discussed below, we cannot rescue the BIA from its paucity of analysis by injecting issues that were raised by the IJ, but were neither addressed nor

11

relied upon in the BIA's opinion.[3]

## III.    ANALYSIS

An asylum applicant must demonstrate either past persecution or a well-founded fear of future persecution. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). In order to establish eligibility on the basis of past persecution, an applicant must show: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of a statutorily protected ground; and (3) is committed by the government or forces the government is either unable or unwilling to control." *See Gao*, 299 F.3d at 272. An applicant has a well-founded fear of future

---

[3]We recognize that the large number of cases on the BIA's docket imposes practical limitations on the length of the BIA's written opinions. The difficulties in this appeal stem not from a BIA opinion that is too short, but rather from the BIA's failure to identify the portions of the IJ's analysis that it was adopting in support of its conclusion that Voci had not demonstrated past persecution. In cases where the BIA agrees with the IJ's analysis and conclusions, we have upheld the BIA's streamlining procedure, in which it effectively adopts the IJ's opinion as its own. *See Dia v. Ashcroft*, 353 F.3d 228, 243-45 (3d Cir. 2003) (*en banc*). In cases where the BIA rejects portions of the IJ's analysis, but nonetheless agrees with the IJ's decision to deny relief, the BIA need not write a lengthy opinion. However, it must either briefly state its own reasons for rejecting the petitioner's claim, or identify the portions of the IJ's analysis that it has adopted in support of its decision to deny relief.

persecution if he shows that he has a subjectively genuine fear, and that a reasonable person in his circumstances would fear persecution if returned to his native country. *See id.*

Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard. *See id.* (citing *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001).

> [T]he question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record. If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence.

*Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

The BIA accepted Voci's testimony as credible, and yet determined that Voci had not shown that he experienced past persecution in Albania. The BIA's opinion does not explain how the BIA reached this result. It appears there are two paths the BIA may have taken, neither of which is satisfactory on the

13

current record. First, the BIA could have determined that even accepting Voci's testimony as true, the beatings and other mistreatment he experienced simply did not rise to the level of persecution under the INA. Alternatively, the BIA could have determined that even if Voci's testimony was credible, and even if the events described in the testimony would be sufficiently severe to constitute persecution, Voci's failure to provide corroborative documentary evidence meant that Voci had not carried his burden of proof with respect to demonstrating past persecution.

### A.      The "Severity" Theory

The first theory, that the alleged mistreatment suffered by Voci at the hands of the police was not sufficiently severe to constitute persecution, appears to be inconsistent with existing BIA and federal appellate decisions. While the INA does not define the term "persecution," we have indicated that persecution denotes "extreme conduct," and that "the concept of persecution does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Voci alleged that he suffered multiple beatings, seven of which he characterized as severe, and at least one of which resulted in a broken knee and an extended hospital stay.[4] He also alleges that

_____

[4]We have excluded from our calculus the incident in which Voci claimed to have been knocked down and beaten up by police

14

he was threatened on multiple occasions, and that police attempted to intimidate his family members and threatened their safety if Voci refused to abandon his political activities.

Taken together, we believe the mistreatment alleged by Voci rises to the level of "persecution." If Voci indeed faced multiple beatings from police, including beatings that caused injury and that in one instance broke his knee and resulted in extended hospitalization, all as a result of his political beliefs, it can fairly be said that the police were engaged in a "program or campaign to . . . drive away or subjugate [Voci] because of [his] beliefs." *See Fatin*, 12 F.3d at 1240 n.10 (discussing definition of "persecution"). Prior BIA precedent supports this view. For

in connection with the February 1991 Democratic Party protest rally in Korca. Voci's testimony indicated that this protest involved vandalism by the protesters, in which they pulled down a large statue of the former Prime Minister of Albania. Police violence arising in response to civil unrest and violent protests, even police violence that might involve excessive force, is not necessarily considered persecution on account of an applicant's political beliefs. *See, e.g., Shardar v. Ashcroft*, 382 F.3d 318, 323-24 (3d Cir. 2004) (upholding IJ's finding of no persecution where evidence indicated that detention of petitioner arose as a result of petitioner's participation in an unlawful violent demonstration); *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004) (petitioner's evidence that she was beaten by police and jailed for two days following participation in protest rally "could reasonably be viewed as motivated by her status as a protester rather than religious persecution").

15

example, in a case where an asylum applicant suffered physical attacks on three occasions, where his son suffered a physical attack that resulted in an injury to the son's knee requiring hospitalization, where the applicant's apartment was broken into and his possessions stolen or destroyed, and where the applicant and his son were verbally harassed and threatened on multiple occasions, the BIA held that "these incidents constitute more than mere discrimination and harassment. In the aggregate, they rise to the level of persecution as contemplated by the Act." *See In re O-Z & I-Z*, 1198 BIA LEXIS 12, *6-*7 (April 2, 1998).

While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution. *See, e.g., Chen v. Ashcroft*, 381 F.3d 221, 234-35 (3d Cir. 2004) (holding that BIA reasonably found that respondent's alleged beating at the hands of government officials did not constitute persecution, and stating "Chen's scuffle with the local officials does not appear to have been serious. For example, the government points out that Chen has never alleged that this altercation resulted in any injuries that required medical treatment"); *Woldermariam v. Ashcroft*, 112 Fed. Appx. 189, 193 (3d Cir. 2004) ("[T]he purported beating of Woldermariam by the Eritrean authorities, a solitary incident causing no serious injuries, does not evince conduct so severe that it constitutes a real threat to life or freedom"). In contrast to the respondents in *Chen* and *Woldermariam*, Voci alleged that he suffered repeated

16

beatings over a period of several years, and that seven of these beatings were "severe," resulting in bleeding, scars, and "health problems." This mistreatment apparently culminated in a 1997 beating where Voci's knee was broken by a police officer wielding a gun, after which Voci was left by the side of the road until a passerby summoned assistance. Voci testified that this injury to his knee resulted in a hospital stay of approximately three months. Voci's testimony with respect to the number of beatings he suffered, and the injuries resulting therefrom, distinguishes his situation from *Chen* and *Woldermariam*, and is instead more analogous to *O-Z & I-Z*, in which the BIA held that multiple beatings, including one resulting in a knee injury, coupled with other harassment, constituted persecution under the INA.[5]

The conclusion that Voci experienced past persecution is also consistent with the approach taken by the Seventh Circuit, which has addressed on multiple occasions the question of whether a beating or series of beatings rises to the level of persecution under the INA. The Seventh Circuit's basic

---

[5]The "other harassment" in Voci's case would include the threatening letters received by Voci during the early 1990s, the multiple occasions between 1990 and 1994 where the police came to Voci's home and threatened his mother, and the 1998 incident in which the police came to Voci's parents' house, forced their way in, destroyed a number of the family's belongings, and beat Voci, his sister, and his mother.

17

approach is that if a beating is an isolated incident, and if it results in minor, but not severe, physical injury, then it will be unlikely to constitute persecution under the INA. *See Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (single three-day detention, in which respondent was deprived of food and suffered a swollen face as a result of beatings from police, did not compel reversal of BIA's decision that respondent had not suffered persecution). In contrast, multiple beatings inflicted on the same respondent on multiple occasions are more likely to give rise to a finding of persecution, although the existence of multiple incidents is not a requirement. *See id.* at 573 ("Although the frequency issue is not dispositive, it does figure significantly in the analysis . . . While, obviously, multiple incidents create a more compelling case for finding persecution, the number of times that a petitioner has been subject to detention or physical abuse is merely one variable in the analysis of the whole of the petitioner's claim of past persecution"). The Seventh Circuit has also indicated that even a single beating can constitute persecution, assuming that the beating results in significant physical injury. *See, e.g., Asani v. INS*, 154 F.3d 719, 722-23 (7th Cir. 1998) (respondent suffered past persecution where he was detained by police, beaten, and had two of his teeth knocked out); *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (single beating in which petitioner's face was bruised and his finger broken constituted past persecution). It appears that Voci's mistreatment at the hands of the Albanian police would constitute past persecution under the Seventh Circuit's approach. We likewise conclude that if Voci is able to

18

meet his burden of proof and show that the incidents he described actually occurred, these incidents would be sufficiently severe, when taken together, to satisfy the first prong of *Gao's* three-part test for establishing past persecution.

Finally, with respect to this issue, we are unaware of any prior BIA or federal appellate cases in which treatment similar to that experienced by Voci was found to *not* rise to the level of persecution. The government argues that the BIA reasonably concluded that the incidents described by Voci did not satisfy the "severity" threshold established by the first *Gao* prong. However, the only cases cited by the government on this issue are invoked for purposes of the boilerplate proposition that persecution must involve extreme conduct, and does not necessarily encompass all treatment that might be unpleasant or cause suffering. These citations are not particularly helpful in addressing the question at hand, and the government has cited to no authority, from this Court or any other, which would indicate that mistreatment of the sort experienced by Voci does not rise to the level of persecution under the INA. We therefore hold that to the extent the BIA determined that the pattern of mistreatment allegedly suffered by Voci was not sufficiently severe to constitute persecution, the BIA's finding was not supported by substantial evidence.

B.      The "Corroboration" Theory

The government argues that an alternative theory that

supports the BIA's denial of Voci's claim relates to the absence of corroborative evidence for portions of Voci's testimony. The IJ complained that Voci had not produced documentation or medical records to corroborate his claims of having been hospitalized after being beaten by the Albanian police. We have held that "the BIA may sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." *See Abdulai*, 239 F.3d at 554. We have noted that the BIA's prior decisions establish that it is reasonable to expect an applicant to corroborate facts "which are central to his or her claim and easily subject to verification." *See id.* We observed in *Abdulai*, without expressing agreement,[6] that the BIA has included in this category "evidence of an applicant's place of birth, media accounts of large demonstrations, evidence of a publicly held office, or *documentation of medical treatment*." *See id.* (emphasis added).

While our analysis in *Abdulai* highlights the fact that the BIA might permissibly seek corroboration from Voci concerning his past medical treatment, our holding in *Abdulai* also illustrates why this case must be remanded for further

_____

[6]"In setting out this summary of the [BIA's] case law, we express no opinion as to whether we agree that it is 'reasonable' to expect applicants for asylum or withholding of removal to corroborate these types of information." *Abdulai*, 239 F.3d at 555 n.9.

20

proceedings. In *Abdulai*, we noted that the BIA's rule concerning corroboration contemplates a three-part inquiry: (1) an identification of the facts for which "it is reasonable to expect corroboration;" (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so. *See id.* at 554. The government argued in *Abdulai* that the petitioner should have submitted medical records relating to his hospital stay after being released from military detention. *See id.* at 555. We declined to rule on the issue because we found that the BIA's opinion addressed only the second element of the three-part inquiry described above, and did so using general language that failed to identify the specific facts for which the BIA sought additional corroboration. *See Abdulai*, 239 F.3d at 555. We stated "[t]hough we are uncertain whether it would be reasonable to hold Abdulai's failure to procure Nigerian hospital records against him (assuming such records even exist), that concern is ultimately beside the point. Because the BIA never stated which aspects of his story it would have been reasonable to corroborate, we have no way of reviewing the Board's actual reasoning." *Id.* We concluded that "[b]ecause the BIA's failure of explanation makes it impossible for us to review its rationale, we grant Abdulai's petition for review, vacate the Board's order, and remand the matter to it for further proceedings consistent with this opinion." *Id.*

Here, the BIA through its opinion has provided even less

21

information than was provided in *Abdulai*. It is not even clear from the BIA's opinion whether the BIA believed that Voci had failed to provide adequate corroboration, and the BIA's opinion does not apply the three-part inquiry that we discussed in *Abdulai*. In this situation, it would be improper for us to speculate as to whether the BIA, *sub silentio*, believed that Voci had not shown past persecution because he failed adequately to corroborate his testimony. Instead, to the extent that Voci's lack of documentary corroboration for his testimony may reflect a failure on Voci's part to carry his burden of proof, it raises an issue that can and should be addressed explicitly by the agency upon remand.[7]

## C. Changed Country Conditions

Along with the two theories discussed above, the

---

[7]Our view is reinforced by the fact that the IJ's concern regarding Voci's failure to provide medical records may have arisen in the context of the IJ's broader attack on Voci's credibility. The BIA disagreed with the IJ's adverse credibility finding. In these circumstances, we can do little more than speculate concerning what weight, if any, the BIA placed on Voci's failure to introduce Albanian hospital records in support of his otherwise credible testimony. *Cf. Wu v. Ashcroft*, 393 F.3d 418, 425 (3d Cir. 2005) ("[W]here, as here, the Immigration Judge finds a witness to be credible, but then renders a decision that is contrary to that testimony without explaining why, we cannot say at this point that such a decision is supported by substantial evidence").

22

government also contends that the BIA's decision should be affirmed on the basis of changed country conditions. The government argues that conditions in Albania have improved such that there is no longer an objective basis for a well-founded fear of persecution if Voci were returned. The IJ's decision included a finding that even if Voci had experienced past persecution in Albania, country conditions in Albania had changed to the point where Voci no longer had a well-founded fear of future persecution. The IJ stated that based on this finding, as an alternative ground for his decision, he would deny relief pursuant to 8 C.F.R. § 208.13. This regulation indicates that where an asylum applicant has established past persecution, the existence of that persecution gives rise to a presumption that the applicant has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). This presumption may be rebutted, however, if the government establishes, by a preponderance of the evidence, that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" in his or her home country. *See* 8 C.F.R. § 208.13(b)(1)(i)-(ii).

Unfortunately, the BIA's approach, as reflected in its opinion, prevents us from reaching the merits of the government's argument concerning changed country conditions in Albania. The BIA elected to question some aspects of the IJ's analysis, while affirming, using very general language, the result the IJ reached. In this situation, we cannot simply assume that the BIA somehow adopted the IJ's changed conditions

23

reasoning without explicitly referring to the issue, and without discussing or acknowledging the framework for the changed conditions inquiry that is established by 8 C.F.R. § 208.13.

We have emphasized that under 8 C.F.R. § 208.13, "[t]he burden of proof in a changed-country-conditions rebuttal is squarely on the government[.]" *See Berishaj*, 378 at 328. The IJ explicitly referenced 8 C.F.R. § 208.13 in connection with his changed-country-conditions analysis, and stated that for purposes of this analysis he was assuming that Voci had indeed established the existence of past persecution. These statements support an inference that the IJ understood that the government bore the burden of proof on the changed conditions inquiry, and that he believed the evidence contained in the record satisfied the government's burden. In contrast, the BIA's opinion does not reference 8 C.F.R. § 208.13, and does not discuss the possibility of changed country conditions in Albania. The BIA states that "the respondent has not demonstrated that he has suffered past persecution in his native Albania," but its opinion provides no basis for assuming that it used the same analysis used by the IJ. There is no indication that the BIA (1) assumed that Voci had experienced past persecution, (2) shifted the burden of proof concerning changed country conditions to the government, and then (3) analyzed whether the record evidence provided a basis for holding that the government had satisfied this burden. In the absence of such analysis, it would be inappropriate for us to attribute the IJ's reasoning to the BIA. *See INS v. Ventura*, 537 U.S. 12, 17-18 (2002) (summarily

24

reversing Ninth Circuit and holding that court of appeals may not address issue of changed country conditions in instance where that issue was addressed by the IJ, but was not reached by the BIA). Instead, to the extent the question of changed country conditions in Albania has a potential bearing on Voci's application for relief, we must remand to the BIA in order to permit the BIA to assess the issue in light of its own expertise. *See Ventura*, 537 U.S. at 17-18; *see also Amanfi v. Ashcroft*, 328 F.3d 719, 730 (3d Cir. 2003) (remanding to BIA for determination of whether applicant had presented credible testimony in support of his claim, in instance where IJ had made adverse credibility determination and BIA had affirmed IJ's holding on alternate ground).

## IV.    CONCLUSION

For the reasons discussed above, Voci's petition for review is granted, and the case is remanded to the BIA for further proceedings consistent with this opinion.