**Yuliya Vladimirovna MIRONOVA,**
**Petitioner,**

v.

**ATTORNEY GENERAL OF THE UNITED STATES,**
**Respondent.**

No. 06–1769.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 14, 2007.

Opinion Filed: Jan. 3, 2008.

H. Raymond Fasano, Madeo & Fasano, New York, NY, for Petitioner.

Janice K. Redfern, Lindsay Glauner, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER and AMBRO, Circuit Judges, POLLAK,* District Judge.

## OPINION

POLLAK, District Judge.

Yuliya Vladimirovna Mironova petitions for review of the Board of Immigration Appeals' ("BIA") order of February 6, 2006, affirming the immigration judge's ("IJ") denial of her applications for asylum and withholding of removal. For the reasons given below, her petition will be denied.

### I.

Petitioner, a native and citizen of Russia, entered the United States on a tourist visa that expired on December 23, 2003. On December 24, 2003, she applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The Department of Homeland Security ("DHS") commenced removal proceedings against her by filing a Notice to Appear alleging that she was removable for remaining in the United States after her visa expired. On March 25, 2004, at a hearing before an IJ, petitioner admitted the allegations and conceded removability. At a subsequent hearing, on September 28, 2004, she testified in support of her applications for relief.

Petitioner sought asylum on the ground that she was persecuted in Russia on account of her religion. Born into the Russian Orthodox church, petitioner began attending meetings of a congregation of more than 200 Jehovah's Witnesses in 1998. Petitioner attended meetings almost daily.

Petitioner described in her testimony and application two incidents in which she was attacked on account of her religion while distributing leaflets in Tula, Russia, the city where she lived. In the first incident, on November 8, 1999, a group of five or six men whom petitioner identified as members of the Russian National Unity ("RNU") approached her. One of the men looked at her leaflet, and then tore it up and slapped her. The men then insulted petitioner and her religion, kicked her, pushed her, and eventually punched her in the chin, causing her to fall and hurt her ankle. She was treated at a hospital for a broken toe. In a second incident, on May 18, 2000, petitioner and a fellow Jehovah's Witness named Olga were approached by three RNU members. One of them twisted petitioner's arm, grabbed her handbag, dumped out its contents, copied down her address from her passport, tore up her remaining leaflets, and threatened that the men would hunt her down. Petitioner and Olga went to the police, who told them that there were no grounds for filing a complaint and suggested that they leave before the police inquired into the legality of distributing the leaflets. The two women then returned to petitioner's house, where they were ambushed by a man in the lobby of her apartment building, who stabbed petitioner in the hand as she was protecting her face. She lost consciousness and was later treated at a hospital. The doctor called the police, who questioned petitioner briefly but did not pursue the matter further.

Petitioner also briefly described an incident in which her husband, also a Jehovah's Witness, was beaten up shortly after petitioner had left Russia for the United States. Petitioner is in contact with both her husband and with Olga, both of whom continue to practice their religion as Jehovah's Witnesses in Russia.

* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

The IJ denied petitioner's applications, in part on the ground that petitioner's testimony was not credible. On appeal, the BIA reversed the IJ's adverse credibility determination but affirmed the IJ's holding that petitioner failed to establish her eligibility for asylum, withholding of removal, and CAT relief. Petitioner appeals the denial of her applications for asylum and withholding of removal. (Petitioner does not appeal the denial of CAT relief.)

## II.

Because the BIA issued an opinion adopting in part the opinion of the IJ, we review both decisions. *See Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004). We review an IJ's factual findings, including the determination whether an alien was subject to persecution or has a well-founded fear of future persecution, under the substantial evidence standard. *See Toure v. Att'y Gen.,* 443 F.3d 310, 316 (3d Cir.2006). We may not set aside an IJ's finding unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant must demonstrate either past persecution or a well-founded fear of future persecution. *See Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). In order to establish eligibility for asylum on the basis of past persecution, an applicant must show: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of a statutorily protected ground; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Id.* We have defined persecution as " 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.' " *Toure,* 443 F.3d at 317 (quoting *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993)). "[P]ersecution denotes extreme conduct, and ... does not encompass all treatment that our society

regards as unfair, unjust or even unlawful or unconstitutional." *Voci v. Gonzales,* 409 F.3d 607, 615 (3d Cir.2005) (internal quotation marks omitted).

The IJ held that, although the attacks on petitioner were "clearly reprehensible," they were isolated and insufficiently severe to rise to the level of persecution. The IJ also held that petitioner failed to establish a well-founded fear of future persecution, citing petitioner's testimony that (1) petitioner was able to attend Jehovah's Witness meetings nearly daily between 1998 and 2003, apparently without difficulty aside from the two incidents in 1999 and 2000; (2) there were 200 other Jehovah's Witnesses in her congregation, as well as a second congregation in Tula; and (3) her friend Olga is still practicing the religion in Tula, apparently without further incident.

We conclude that the BIA's opinion, resting on the reasons given by the IJ, is supported by substantial evidence. Petitioner's two arguments to the contrary are unpersuasive. First, petitioner contends that the three assaults (two on her, and one on her husband), considered collectively, amount to persecution. In support, she cites our statement in *Toure* that we "weigh [a particular incident] in conjunction with the prior incidents," 443 F.3d at 318. This contention fails because the three incidents in *Toure* were considerably more severe than those described by petitioner. *See id.* at 314–15 (military forces detained petitioner for two weeks; detained him a second time and severely beat him; and "ransacked his home," abducted his wife, and severely beat her).

Second, petitioner contends that the IJ did not take sufficient account of the background evidence on harassment of Jehovah's Witnesses in Russia. In fact, the IJ did note this evidence, but found it outweighed by the evidence in the record, cited above, that petitioner would be able

to practice her religion if she returned to Tula. Because it is supported by substantial evidence, we cannot disturb this finding.

Accordingly, the petition for review will be denied.