NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2234
_____


NERYS YAMILETH GARAY;
Y. A. G.H.; E. D. G.H.,
                                        Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____


On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA Nos. A208-201-757, A208-201-758, A208-201-759
(U.S. Immigration Judge: John B. Carle)
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2021

Before:  CHAGARES, JORDAN, and SCIRICA, *Circuit Judges*.

(Filed: August 31, 2021)


_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Nerys Garay and her two minor children ("Petitioners") petition for review of the Board of Immigration Appeals's order affirming the Immigration Judge's denial of their applications for asylum. Petitioners contend they are eligible for asylum because they suffered past persecution and have a well-founded fear of future persecution based upon their religion and anti-gang sentiment. But the Administrative Record before us provides substantial evidence favoring the BIA's conclusion that Petitioners have not demonstrated past persecution or a well-founded fear of future persecution on account of a protected ground. Accordingly, we will deny the petition for review.

## I.

Garay and her two minor children are citizens of El Salvador. They applied for admission to the United States in 2015 and were later placed into removal proceedings through the issuance of Notices to Appear before an immigration judge. Petitioners sought withholding of removal and protection under the Convention Against Torture and filed an I-589 application for asylum. Garay and her children sought asylum based on her religion as a Jehovah's Witness, her membership in the social group of those who resist gangs, and her anti-gang political opinion.

The IJ heard Garay's testimony at an individual hearing. Garay testified that she became a Jehovah's Witness in 2014 and has been proselytizing—a tenet of the religion—in both El Salvador and the United States. She also said that the children preach along with her. Garay testified that, upon a return to El Salvador, she would be

unable to preach freely, as she would need to avoid preaching in areas where the gangs had a stronger presence and "gave more resistance." Garay testified that, when she preached near gang territories, gang members shouted obscene words, but never bothered her or other congregants meeting at religious gatherings. She said she was once stopped by gang members and asked to identify herself but had never been assaulted while preaching. Her fellow congregants from El Salvador have continued to preach without being harmed but have had to change their routines for preaching.

Garay also stated she is afraid to return to El Salvador because of increased pressure the gangs may place on her teenage sons. Garay added that her husband's nephew was killed at the age of sixteen for refusing to join a gang. Garay stated that her husband's brother was killed for visiting his daughter in an area controlled by a different gang than the one in which he lived. Garay testified that gangs dislike anyone who "actually takes a stand against them" and that even non-religious people who oppose gangs face repercussions.

The IJ found Garay provided credible testimony but ordered Petitioners' removal to El Salvador. The IJ rejected Petitioners' request for withholding of removal, claims under the CAT, and application for asylum. On the issue of past persecution, the IJ concluded that Garay had not experienced past persecution because she had not experienced physical harm, threats of violence, or witnessed any harm. On whether a well-founded fear of future persecution was established, the IJ concluded the mistreatment was not motivated by a protected ground because Petitioners produced no evidence they were targeted on account of their religion or "were politically active or

3

made any anti-gang political statements." Accordingly, the IJ concluded that petitioners did not establish their eligibility for asylum and, therefore, had not met their burden of proving eligibility for withholding of removal.

Petitioners appealed their removal orders to the BIA. The BIA adopted and affirmed the IJ's decision while adding comments of its own. This petition for review followed.[1]

## II.[2]

Under the INA, an alien who enters the United States without permission is removable. *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). A removable alien may be eligible for asylum if he demonstrates that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [the country to which he would be removed] because of persecution or a well-founded fear of persecution on account of . . . religion . . .[or] membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). Thus, an applicant may establish

---

[1] Petitioners only raised issues related to asylum eligibility in their opening brief, so the denial of their motion to terminate and their requests for protection under the CAT were forfeited.

[2] The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) & 1240.15. We have jurisdiction under 8 U.S.C. § 1252. We review matters of law de novo. *McNary v. Haitian Refugee Center*, 498 U.S. 479, 493 (1991). Agency factual findings involving claims to asylum are reviewed for substantial evidence, *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006), and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Agency conclusions regarding evidence of past persecution and the well-founded fear of persecution are findings of fact. *Chavarria*, 446 F.3d at 515. When the BIA adopts and affirms the IJ's decision with a few comments of its own, as it did here, this Court has authority to review both decisions. *Sandie v. Att'y Gen.,* 562 F.3d 246, 250 (3d. Cir. 2009).

4

eligibility for asylum by showing past persecution or a well-founded fear of future persecution. *Doe v. Att'y Gen.*, 956 F.3d 135, 141 (3d Cir. 2020). The IJ and BIA concluded Petitioners failed to show that they suffered past persecution or that they will likely suffer future persecution based upon their religion and resistance to gang membership. We consider these two bases for asylum in turn.

## A.

To establish that an applicant is a refugee based on past persecution, the applicant must show*, inter alia*, (i) that the incident or incidents of mistreatment rise to the level of persecution, and (ii) that he or she was targeted for mistreatment on account of one of the statutorily protected grounds. *Doe*, 956 F.3d at 141–42. The agency found neither of these requirements were met. We believe that conclusion is supported by substantial evidence.

Persecution does not encompass all treatment that may be deemed unfair, unjust, or even unlawful or unconstitutional in our society. *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution encompasses grave harms, such as, "threats to life, confinement, torture, and economic restrictions so severe they constitute a threat to life or freedom." *Id*. "[I]solated incidents that do not result in serious injury do not rise to the level of persecution." *Voci v. Gonzales*,409 F.3d 607, 615 (3d Cir. 2005). Whether a verbal threat suffices to establish persecution requires considering whether the threat is "concrete and menacing." *Herrera-Reyes v. Att'y Gen*., 952 F.3d 101, 110 (3d Cir. 2020). On appeal, Petitioners contend threats levied by gangs and gang-imposed territorial restrictions on proselytizing constitute past persecution.

5

In *Herrera-Reyes v. Attorney General*, a Nicaraguan national received death threats from members of the governing Sandinista Party after her home was burned down, came under gunfire in a convoy she was traveling with, and was robbed at gunpoint at a political meeting she was organizing. 952 F.3d at 104. We held that the death threat to Petitioner was "concrete" because it was substantiated by an escalating pattern of mistreatment encompassing property damage, verbal threats of violence directed at the petitioner, and actual violence against her and her compatriot. *Id*. at 112. We held the death threat was menacing because the Sandinistas had murdered her political compatriot, demonstrating their willingness "to add murder to the abuse they inflicted on her." *Id*.

Garay's mistreatment by the gangs was not sufficiently concrete and menacing to constitute persecution. Garay testified that she had been verbally mistreated and mocked while proselytizing. But Garay acknowledged that neither her nor her sons have been physically harmed or personally threatened in the process of practicing their religion or otherwise. Though Garay is aware of several people who were murdered by the gangs, she has not personally witnessed any violence.[3]

---

[3] Relying largely on *Muhur v. Ashcroft*, 355 F.3d 958, 960 (7th Cir. 2004), Garay contends that gang members' curtailment on her ability to preach in certain territories rises to the level of persecution. But her reliance on *Muhur* is misplaced because she is not forced to conceal her religion in El Salvador. In *Muhur*, the Seventh Circuit held the agency improperly held an applicant could avoid persecution by concealing her religion. 355 F.3d at 960. But Garay did not suggest she would need to conceal her religion—she testified that she would continue to preach in non-gang territories upon her return to El Salvador. Although the leader of the Petitioner's preaching activities in El Salvador was told to not proselytize in gang territories, congregants continue to proselytize openly in other territories.

Even if the gang members' mistreatment of Petitioners could qualify as harm that rises to the level of persecution, substantial evidence supports the agency's conclusion that a protected ground did not motivate the mistreatment. *See* 8 U.S.C. §§ 1101, 1158 (listing the protected grounds). "[A] demonstration of past persecution alone is not sufficient to qualify an applicant for asylum." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 343 (3d Cir. 2008). "We must also 'look beyond the applicant's conduct to the persecutor's motives.'" *Id*. Petitioners contend the record demonstrates their mistreatment was motivated by their religion and anti-gang political sentiment. The BIA concluded the IJ did not clearly err in concluding otherwise.

We see nothing in the record that contradicts the agency's findings. We cannot consider anti-gang sentiment as the motivation for mistreatment because Petitioners produced no evidence that they "were politically active or made any anti-gang political statements."; *see also Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 609 (3d Cir. 2011) (stating that mere refusal to join a gang was insufficient to demonstrate gang members knew the alien held an anti-gang political opinion); *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 180-81 (3d Cir. 2020) (observing that petitioners must show that they expressed a political opinion or that the perpetrators attributed them with one and acted upon it). Garay's own testimony does not support Petitioners' contention that gangs' mistreatment of them was motivated by a protected ground. Garay believed that gang members may be aware that her religion does not approve of their behavior. But Garay also testified that gang members do not limit their abuse to Jehovah's Witnesses or those who oppose gangs. *See* AR 208 (testifying that the gangs target "the whole

7

citizenry. If anybody says something to them, they threaten them."). Accordingly, substantial evidence favors the agency's finding that Petitioners did not sufficiently establish past persecution on account of a protected ground.

**B.**

Petitioners also claim the BIA erred in its determination that they did not establish a likelihood of future prosecution on a protected ground. "An alien who has not suffered past persecution can establish eligibility for asylum by showing a 'reasonable possibility' of future persecution on account of a protected ground. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021). A sufficient threat of future persecution may be established "by showing either that it is more likely than not that he will be 'singled out individually' for persecution on account of a protected basis, or that 'there is a pattern or practice of persecution of a group of persons similarly situated' to him on account of a protected basis." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 687 (3d Cir. 2015). An applicant must also demonstrate that his protected characteristic "was or will be at least one central reason" for his persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *see Gonzalez-Posadas*, 781 F.3d at 684–85holding that the "one central reason" standard applies in the context of withholding of removal). "For a protected characteristic to qualify as 'one central reason', it must be an essential or principal reason for the persecution . . . ." *Id*. at 685. The characteristic cannot play "only an incidental, tangential, or superficial role in persecution.'" *Id*.

Petitioners did not establish that their religion and anti-gang opinions serve as central reasons for their past mistreatment, as discussed in Section II(a), or prospective

mistreatment. Religion appears to be a tangential basis for Petitioners' mistreatment because the record suggests gangs sought primarily to control and expand their territory. *See Gonzalez-Posadas*, 781 F.3d at 686 (explaining that gangs may utilize mistreatment as a means to an end—payment or gang expansion). Petitioners also fail to demonstrate that their anti-gang political opinion is the central reason for gang mistreatment. Mere refusal to join a gang is insufficient to demonstrate a political opinion or to convey to gang members that the Petitioners (the two boy) held an anti-gang political opinion. *Valdiviezo-Galdamez*, 663 F.3d at 609. "Holding a political opinion, without more, is not sufficient to show persecution on account of that political opinion." *Id*. Here, there is no evidence that Petitioners have sufficiently expressed anti-gang sentiments to the gang. Though there is more than one way to view the record before us, we conclude the agency's determination that Petitioners failed to establish they would be subjected to future persecution on account of a protected ground is supported by substantial evidence.

**III.**

For the foregoing reasons, we will deny the petition for review.