

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2008

# Leskaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Leskaj v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1309.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1309

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2684

———————

JULIAN LESKAJ,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent

———————

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A79-042-927
Immigration Judge: Mirlande Tadal

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2008

Before:   AMBRO, FISHER, and JORDAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  April 29, 2008)

———————

OPINION

———————

PER CURIAM

Petitioner Julian Leskaj, a native and citizen of Albania, was served with a Notice

to Appear on August 28, 2001, alleging that he entered the United States two days before

near Eagle Pass, Texas without being admitted or paroled and was thus removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i). At a Master Calendar hearing Leskaj admitted these facts. In May 2002, he submitted his original applications for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of political opinion. An amended version of his asylum application was admitted during his 2005 removal hearing. Leskaj claimed that, as a former member of the Democratic Party in Albania, he fears being killed by the Albanian police, the ranks of which are dominated by extremist Socialist sympathizers.

Leskaj testified that, in 1997, he and his parents were active members of the Democratic Party, participating in various demonstrations, providing financial assistance, and even assisting the Chairman of the party in Elbasan, where his family lives. His father was an officer in the army until 1989, and his mother worked at the army base. Thereafter, his parents owned a store. Albania was plagued by lawlessness. There was no government and civilians were armed. The Socialist Party was the governing party in Albania. On May 22, 1997, Leskaj was attacked by masked members of the Albanian police. They jumped out of a van and accosted him as he walked home from the store, and kicked and hit him. The attack lasted a minute. His attackers, who were carrying automatic weapons, told him not to assist or support the Democratic Party or they would

2

kill him. Leskaj suffered large and deep cuts to his chin and toes, which required stitches and resulted in scarring. He went to a hospital the next day for treatment and was under a physician's care for a month. His father reported this incident to the chairman of the Democratic Party in the Elbasan District, but he did not pursue a complaint with the Albanian police for obvious reasons.

Leskaj went to Greece on a visa after this incident, but was deported by the Greek government when the visa expired. Again he obtained a visa and again he returned to Greece for a year and a half. When this visa expired, he again was returned to Albania. He remained in Albania for one year before coming to the United States. Leskaj testified that he left Albania for good when, after returning from Greece the second time, he was followed by the police on two or three occasions. With respect to the issue of future persecution, Leskaj testified that he is afraid to return to Elbasan because the Socialist Party is in control there. He believes that the police who attacked him in 1997 will recognize him and target him, and that extremist Socialists do this sort of thing with impunity. He also fears that his return will endanger his parents, who otherwise have been unharmed since he left.

Leskaj offered exhibits in support of his claim for asylum: two Certificates from the Chairman of his party in the Elbasan District, stating that he had been menaced and threatened with death by Communists on account of his active participation in the 1997 election campaign, and a physician's note indicating that he had been treated for an injury

to his jaw and the toes of his right foot on May 23, 1997.

On cross-examination, the government established that Leskaj had omitted any reference to the May 1997 beating in his original asylum application. Leskaj explained that this was due to his belief that he ultimately would seek adjustment of status on the basis of his marriage on August 14, 2002, rather than seek asylum. (He and his wife have since separated). In addition, the Administrative Record contains the State Department's Country Report on Human Rights Practices for Albania for 2004. It states that municipal elections took place in 2003, and they met basic democratic standards. The Democratic and Socialist parties held the majority of seats in the Parliament.

The Immigration Judge found Leskaj removable as charged and denied relief. She found that Leskaj was not credible on the basis of omissions and inconsistencies in his case for relief. In his first application, he failed to make reference to the pivotal incident in May 1997, and his explanation for the omission – that he was hoping to adjust his status on the basis of his marriage – made little sense in that he was, at that time, still single, and, in any event, he had managed to make reference to other events that caused him to seek asylum.[1] Furthermore, the letter he offered from the Chairman of the Democratic Party made no reference to the May 1997 beating. Finally, the incidents of

---

[1] The original application states that the family received anonymous death threats over the telephone during the 2001 elections, and that the windows in the family store were broken.

menacing that caused him to leave Albania once and for all were omitted from the amended application and statement.

However, even assuming that his testimony was credible, the IJ concluded that Leskaj did not meet his burden of establishing either past persecution or a well-founded fear of future persecution on the basis of his membership in the Democratic Party. The IJ noted that, although Leskaj twice departed Albania (for Greece) after the 1997 incident, he returned each time and there were no further incidents. Furthermore, he pointed out that one remote and isolated incident by itself could not establish a basis for granting asylum or withholding of removal under the statute. The IJ also concluded that circumstances had changed enough in Albania, with the rise to power of the Democratic Party, that Leskaj could not show a well-founded fear of persecution. There was no evidence that the Democratic Party would not be able to protect him from extremists in the Socialist Party. In addition, he had no evidence to show that he would be tortured by the Socialist Party-dominated Albanian police if he returned to Albania. Leskaj appealed.

On May 8, 2007, the Board of Immigration Appeals dismissed the appeal. The Board concluded that the IJ's factual findings were free of clear error, 8 C.F.R. § 1003.1(d)(3)(i), and agreed that Leskaj had failed to carry his burden of proof, failed to provide consistent and credible testimony, and thus failed to establish his eligibility for any of the forms of relief. The Board also upheld the IJ's alternative finding that, even if Leskaj established past persecution, the government successfully rebutted the

5

presumption of future persecution. Finally, Leskaj's testimony and corroborative evidence did not establish that it is more likely than not that he would be tortured in Albania. Leskaj timely petitioned for review.

We will deny the petition for review. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). Where the Board renders an opinion that sets forth grounds of decision independent of those relied on by the IJ, we review only the Board's decision and not that of the IJ, see Xie v. Ashcroft, 359 F.3d 239, 240 (3d Cir. 2004), but where, as here, the Board adopted the IJ's reasoning explicitly or implicitly in disposing of the contentions on appeal, we also review the IJ's opinion, id. at 242. The Board's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question which is reviewed under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

We also review an adverse credibility determination under the substantial evidence standard. Xie, 359 F.3d at 242. Under this deferential standard of review, we must uphold the credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Put another way, we are required to sustain an adverse credibility determination "unless no reasonable person

6

would have found the applicant incredible." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) (internal quotations and citation omitted). We uphold adverse credibility determinations based on omissions and discrepancies that go to the heart of a petitioner's claim. Id. at 224.

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). The alien bears the burden of proof. Id. To establish eligibility on the basis of past persecution, an alien must show that he suffered some harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by the government or forces the government is unwilling to control. Gao, 299 F.3d at 272. An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003), but if the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

We conclude that substantial evidence supports the Board's and IJ's determination

7

that the omissions and inconsistencies in his case for relief go to the heart of Leskaj's claim, and cast doubt on the key issue of whether he actually experienced past persecution or will experience future persecution in Albania. Leskaj contends in his brief that the IJ did not give proper weight to his corroborating evidence and thus her adverse credibility finding is not supported by substantial evidence. Leskaj argues that reading the corroborating evidence as a whole, the omission by the Chairman of the Democratic Party of any reference to the May 1997 incident was trivial because the injury report credibly establishes that he received injuries to his face and foot, and the Certificates credibly establish that he was menaced and threatened by the political opposition on account of his political activities.

We observe that this argument has some force, but Leskaj undeniably omitted the May 1997 incident from his original asylum application, and when confronted with this omission, he explained that adjustment of status was his true aim. This explanation falls short of redeeming his credibility because he reported other events in his original asylum application – the anonymous telephone threats and the broken windows – which laid the basis for his political asylum claim. Furthermore, he omitted from his amended application any reference to the fact that he finally left Albania because he was being menaced by members of the police. These omissions alone would lead us to uphold the adverse credibility determination under the deferential standard of review, even if we agreed with Leskaj that the Chairman's failure to specifically mention the May 22, 1997

8

beating in the Certificates was trivial and simply does not bear on his credibility in view of the medical report documenting treatment for injuries on May 23, 1997.

We further conclude that, even assuming that Leskaj testified credibly, a single beating that does not result in a serious physical injury does not compel reversal of the Board's decision that he did not suffer past persecution. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005); see also Dandan v. Ashcroft, 339 F.3d 567, 573-74 (7th Cir. 2003) (addressing single three-day detention in which respondent was deprived of food and suffered swollen face as result of beatings). Because Leskaj cannot show past persecution, he is not entitled to the presumption of a well-founded fear of future persecution. Furthermore, the record substantially supports that the Department of Homeland Security rebutted the presumption of a well-founded fear of persecution insofar as the 2004 Country Report establishes the rise of the Democratic Party within Albania, and with that, the willingness and ability of the Albanian government to protect Leskaj from the lawlessness of a rival political party. In short, we are not compelled to disagree with the Board and IJ in light of the Country Report, which describes improving political relations and which does not cite instances of Democratic Party members being singled out for persecution.

The more exacting standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that

9

country because of the alien's race, religion, nationality, membership in a particular social group or political opinion."  The alien must establish by a "clear probability" that his life or freedom would be threatened in the proposed country of deportation.  Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984).  Because Leskaj failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal.  See Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987).

To prevail on a claim under the Convention Against Torture an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  The IJ found, and the Board agreed, that Leskaj did not submit any evidence that supports a finding that he will more likely than not be tortured if returned to Albania.  The Board held that he failed to provide either testimonial or corroborative evidence showing that he is entitled to relief under the CAT.  We conclude that the record does not compel a different conclusion.

For the foregoing reasons, we will deny the petition for review.