

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-2-2008

# Go v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3664

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Go v. Atty Gen USA" (2008). *2008 Decisions.* Paper 169.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/169

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3664
_____

NATANAEL GO; DEWI SIUSILOWATI,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A95 838 382)
Immigration Judge:  Honorable Donald Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 1, 2008

Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed: December 2, 2008)
_____

OPINION
_____

PER CURIAM

Natanael Go and Dewi Siusilowati ("Petitioners") petition for review of a final

order of removal of the Board of Immigration Appeals ("BIA").  For the reasons that

follow, we will deny the petition for review.

1

Go is a native and citizen of Indonesia. In 1998, he and his wife, Dewi Siusilowati, entered the United States as visitors. In 2002, Go filed an asylum application claiming that he suffered past persecution, and that he has a well-founded fear of future persecution, on account of his Chinese ethnicity and Catholic religion. In 2003, notices to appear were issued charging that Go and Siusilowati were removable for remaining in the United States longer than permitted. At a joint removal hearing, Go and Siusilowati, through counsel, conceded that they were removable. In addition to asylum, Go applied for withholding of removal, relief under the Convention Against Torture ("CAT"), and voluntary departure. Siusilowati sought asylum derivatively through her husband's application and requested voluntary departure.

In support of his applications for relief, Go testified about various incidents that occurred when he lived in Indonesia. Go stated that in 1965, when he was two years old, he and his family sought shelter at a police precinct during anti-Chinese riots. Rioters threw rocks at his family's car and looted and destroyed homes. In 1982, Muslim teenagers threw rocks and sand at Go and a friend, causing them to fall off a motorcycle. Go suffered serious leg injuries. That same year, while Go and his family were attending church, Muslims threw rocks at the building. The Muslims stated that there was a bomb in the church, but it was discovered that the bomb was fake.

Go further testified that in 1994, when he owned an electronic goods business, several customers began taking merchandise without paying for it. Go tried to find the

2

men, who then hired gang members who threatened to kill Go if he pursued them. Go ultimately closed his business. Go also testified that his wife's purse was stolen in 1995. He stated that in 1996 his home was burglarized, and that two weeks later the man believed to be the burglar was found sleeping in a storage area at his home after a failed second burglary attempt. That same year, a man with a knife robbed Go. In 1998, Go left the country because he did not like the discrimination against the Chinese. In 2000, Go's home was burned down during political riots.

The Immigration Judge ("IJ") found Go's asylum application untimely. The IJ denied Go's application for CAT relief, noting that Go had not voiced any fear of being tortured, nor had he testified that he had ever been tortured. The IJ also denied Go's application for withholding of removal. The IJ explained that there was no evidence establishing that the 1965 riots took place due to the ethnicity or religion of the Chinese, or that the Muslim teenagers who threw rocks at him in 1982 did so due to his ethnicity or religion. The IJ found that the attack on Go's church was on account of the parishioners' religion, but that the incident did not rise to the level of persecution. The IJ further found that the threats to Go at his place of business, the burglary of his home, and the robbery on the street, constituted criminal activity, not persecution. The IJ also found no evidence that the arson of Go's house in 2000 took place because he is Chinese and Christian. The IJ concluded that Go had not shown that he suffered past persecution, that he would be singled out for persecution if he returned to Indonesia, that there is a pattern or practice of

3

persecution of Chinese Christians by the Indonesian government, or that the government is unwilling to protect Chinese individuals. The IJ granted Go and his wife voluntary departure. They appealed.

The BIA dismissed the appeal. The BIA agreed with the IJ that Go's asylum application was untimely. The BIA further found that Go had failed to show either past persecution or that his life or freedom would be threatened if he returned to Indonesia. The BIA explained that Go had faced some discrimination and harassment and was the target of crime, but that all of these events, even when considered cumulatively, did not amount to persecution. The BIA agreed with the IJ that many of the incidents, including the arson of Go's home after he left Indonesia, were not tied to a protected ground. The BIA also concluded that Go did not show a pattern or practice of persecution of Chinese Catholics. Finally, the BIA concluded that Go had not presented a sufficient CAT claim. The BIA also granted voluntary departure. This petition for review followed.

Petitioners first argue in their brief that the IJ's oral decision failed to distinguish between victims of criminal activities and persecution, and failed to define persecution and apply the definition to the facts of the case. We agree with the Government that we may not entertain this argument. Where the BIA issues a decision on the merits and not simply a summary affirmance, we review the BIA's, and not the IJ's, decision. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Although in some instances we review both decisions, this approach is the exception rather than the rule because our jurisdiction

4

is limited to a review of the final order of removal. <u>Voci v. Gonzales</u>, 409 F.3d 607, 612 (3d Cir. 2005). We have reviewed the IJ's decision where the BIA expressly adopted a portion of the IJ's decision or announced that it was deferring to the IJ's findings. <u>Id.</u> Here, the BIA did neither. Although the BIA agreed with the IJ's conclusion that Go did not show past persecution, the BIA provided its own rationale.[1] Petitioners' argument is directed solely at the IJ's oral decision and cites to a portion of that decision. Thus, we lack jurisdiction to consider Petitioners' argument. <u>See</u> <u>id.</u>

Petitioners further argue that the IJ failed to consider whether there is a pattern or practice of persecution against ethnic Chinese Catholics in Indonesia. For the reasons stated above, we lack jurisdiction to entertain this argument. To the extent Petitioners further argue that, contrary to the BIA's conclusion, the record establishes a pattern or practice of persecution against ethnic Chinese Catholics in Indonesia, we disagree. Petitioners do not point to evidence showing that native Indonesians are persecuting Chinese Catholics in Indonesia, and that the government is unable or unwilling to control such harm. <u>See</u> <u>Wong v. Attorney General</u>, 539 F.3d 225, 233-34 (3d Cir. 2008) (rejecting a claim by a Chinese Christian of a pattern and practice of persecution in Indonesia). The 2005 U.S. Department of State Country Report reflects that, although

_____

[1]The IJ focused on the criminal nature of the harm Go suffered, concluding that many of the incidents "had nothing to do with persecution." A.R. at 57-58. The BIA recognized the discrimination, harassment, and criminal acts against Go, but concluded that these events did not amount to persecution.

discrimination against the ethnic Chinese persists, the "government officially promotes racial and ethnic tolerance," and "[i]nstances of discrimination and harassment of ethnic Chinese declined compared with previous years." A.R. at 123. Substantial evidence supports the BIA's conclusion that Petitioners did not establish a pattern or practice of persecution.[2]

Accordingly, we will deny the petition for review

---

[2]Petitioners state several times in their brief that Go is eligible for asylum. The BIA, however, concluded that Go's asylum application was untimely. Absent a constitutional claim or question of law, we lack jurisdiction to review this decision. Sukwanputra v. Gonzales, 434 F.3d 627, 634-35 (3d Cir. 2006). Petitioners have not raised such a claim or question.