

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-11-2009

# Lesmana v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1377

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Lesmana v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1199.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1377

KEKE LESMANA;
CASSANDRA E. PRASETYO,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78-580-889)
Immigration Judge:  Honorable Annie S. Garcy

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2009

Before: AMBRO, FISHER and JORDAN, Circuit Judges

(Opinion filed: June 11, 2009)

OPINION

PER CURIAM

        Petitioners Keke Lesmana and Cassandra E. Prasetyo seek review of an order of

the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") final

order of removal.  For the reasons that follow, we will deny their petition.

Petitioners are husband and wife, natives and citizens of Indonesia, and ethnic Chinese Christians.  They entered the United States as non-immigrant visitors on March 28, 2000, and were placed into removal proceedings after Lesmana, the lead respondent, applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on August 22, 2000.  Prasetyo later filed a separate application seeking the same forms of relief.  The IJ found petitioners removable as charged and denied all relief and the BIA affirmed.  Petitioners filed a petition for review.

We have jurisdiction over this petition for review under 8 U.S.C. § 1252.  In cases such as this one, where the BIA "invokes specific aspects of the IJ's analysis and factfinding in support of [its] conclusions," we review both the decisions of the IJ and the BIA.  See Voci v. Gonzalez, 409 F.3d 607, 612-13 (3d Cir. 2005).  We review factual findings, including "conclusions regarding evidence of past persecution and the well-founded fear of persecution" for substantial evidence.  See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006) (citing Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001)).  Under this standard, we will uphold these findings unless "the evidence is such that a reasonable factfinder would be compelled to conclude otherwise."  See id.

To be granted asylum, an applicant must establish that she is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social

2

group, or political opinion." 8 U.S.C. § 1101(a)(42). To be entitled to withholding of removal, an applicant must prove that it is more likely than not that her "life or freedom would be threatened in that country" on account of a protected ground. See 8 U.S.C. § 1231(b)(3). For relief under the CAT, an applicant must demonstrate that it is more likely than not that she would be tortured if removed to her country of origin. See 8 C.F.R. § 208.16(c)(2).

We have defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Additionally, there must be a nexus between the alleged persecution and a protected ground. See 8 U.S.C. §§ 1101(a)(42), 1231(b)(3). An asylum applicant who has demonstrated past persecution is entitled to a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1). Absent a showing of past persecution, an applicant must demonstrate a subjective fear of future persecution and show that a reasonable person in her situation would fear persecution if returned to her country of origin. See 8 C.F.R. § 1208.13(b)(2). An applicant can meet this objective prong either by showing that she would be individually singled out for persecution upon her return or that a pattern and practice of such persecution exists. See 8 C.F.R. § 1208.13(b)(2)(iii).

In support of her application, Prasetyo testified that she was taunted by Indonesian Muslim students when she was 11 years old and from then on always waited 15 minutes

3

after school before leaving for home. On another occasion, she was groped on the school bus while in high school and thereafter began carrying heavy books close to her chest to prevent that from happening again. She decided to become an Indonesian citizen when she was 21 because it made it easier to obtain documentation for school and to find a job. In order to do so, she was required to change her name. Her husband testified that he changed his name and was forced to naturalize in order to continue his education. He claimed that, in trying to do so, he was treated poorly by the clerks who worked at the immigration office because he was Chinese.

Both petitioners testified about the events occurring in 1998 during the riots in Jakarta. On May 13, 1998, both of them were at work when they learned of rioting and homes and businesses being looted and set on fire in their vicinity. According to Prasetyo, most of the residences being targeted were occupied by ethnic Chinese, and the police did not appear to take any action in response. While the riots were occurring, she could hear shouts of epithets regarding people of Chinese ancestry. On May 14, 1998, petitioners were awakened by sirens. The leader of their housing complex told them a mob was approaching and advised them to evacuate to a nearby gym. The next morning, after the mob had subsided, petitioners and the other residents of their housing complex emerged from the gym to find that their houses had been ransacked. A week later, when they were permitted to leave their home, they went to Prasetyo's mother's house in a different section of Jakarta, where they remained until May of 1999. Prasetyo quit her

4

job, began to experience nightmares, and feared life in Jakarta. Petitioners then moved to Surabaya in East Java, about nine hours from Jakarta by train. After approximately one year in Surabaya, petitioners decided to seek asylum in the United States, explaining that they did not believe they would ever feel safe in Indonesia.

The IJ found that, while their testimony was credible, the incidents they related were not sufficiently severe and extreme to constitute past persecution, and that there was no evidence in the record to suggest that either of them might be singled out for future persecution if they were to return to Indonesia. In particular, the IJ noted that they were able to live and worship safely in Surabaya, and could return there, where Lesmana's family lives. Additionally, the IJ found that the evidence in the record did not support a finding of a pattern and practice of persecution of ethnic Chinese Christians in Indonesia. The BIA agreed that while petitioners were credible, the events they related did not rise to the level of persecution, nor did they demonstrate a likelihood of future persecution on account of a protected ground or the existence of a pattern or practice of persecution of ethnic Chinese or Catholics in Indonesia.

In their petition for review, petitioners argue that the IJ erred in concluding that petitioners' experience during the riots did not constitute persecution simply because they were not physically harmed. Additionally, petitioners argue that the attack during the riots constituted a "threat of rape," as many Chinese women were raped during that time, that they suffered from "severe economic restrictions" due to their Chinese ethnicity, and

5

that the IJ failed to consider the cumulative effect of the individual instances of discrimination they experienced. We considered claims very similar to petitioners' in Sioe Tjen Wong v. Attorney General, 539 F.3d 225 (3d Cir. 2008). In Wong, petitioner, also ethnically Chinese, suffered "harassment and discrimination" throughout her youth, her parents' livelihood was threatened, her brother was assaulted and later died from his injuries, she felt compelled to change her name to make herself less noticeable, the church she attended was twice set on fire, and during the 1998 riots, "[she] and her family hid in their house for days, while rioters threw stones and broke the front window." Id. at 228-29. After considering this testimony, as well as the 2003 and 2004 Country Reports on Human Rights Practices for Indonesia, the BIA concluded that Wong had not satisfied the standard for proving persecution, and we agreed that the record did not compel such a finding. Id. at 232. Additionally, we noted in dicta that the more recent State Department reports published between 2005 and 2007 document similar or improved treatment of Chinese Christians in Indonesia. Id. at 234 (emphasizing the importance of basing the "factual determination as to a pattern or practice claim . . . on the most current information in the record").

While we are sympathetic to petitioners' experiences in Indonesia, we cannot say that the evidence in the record compels the conclusion that they suffered from past persecution, nor that they demonstrated a well-founded fear of future persecution. Because petitioners do not meet the standard of asylum, they also fail to meet the more

6

stringent standard for withholding of removal and for relief under the CAT. Based on the

foregoing, we will deny the petition for review.