**Richard TUMUNDO, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–2027.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) on July 1, 2009.

Opinion filed Aug. 27, 2009.

Sigang Li, Esq., Philadelphia, PA, for Petitioner.

Richard M. Evans, Esq., Brooke M. Maurer, Esq., Joan E. Smiley, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, NYGAARD and ROTH, Circuit Judges.

OPINION

PER CURIAM:

Richard Tumundo petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the reasons that follow, we will deny the petition.

I.

Tumundo, a Christian who is a native and citizen of Indonesia, entered the United States on a non-immigrant visa in December 1994. He remained in the United States beyond the period of time allowed under his visa, and was ultimately placed in removal proceedings. He conceded removability and, in 2004, applied for with-

holding of removal and relief under the Convention Against Torture ("CAT").

In 2006, Tumundo testified before the Immigration Judge ("IJ"). He claimed that in the middle of 1994, his girlfriend at the time became pregnant. The two planned to wed, and she agreed to convert from Islam to Christianity. When her family learned of these plans, they kidnapped Tumundo, locked him in a room that they guarded with axes and machetes, and told him that he could marry her only after converting to Islam. Although the family threatened to kill Tumundo, the only physical injury he suffered during his confinement was a swollen jaw. After approximately a month in captivity, Tumundo escaped and fled to another island in Indonesia, where he remained for about four months without incident before traveling to the United States.

Tumundo explained that, approximately nine years after the child was born, the girlfriend's family gave the child to Tumundo's father, who lives in Indonesia. The family threatened that if Tumundo's father raised the child Christian, Tumundo's father would be killed. Tumundo believed that the family gave the child to his father in the hopes that doing so would help the family find Tumundo, and because the family was too poor to raise the child.

Tumundo testified that he fears returning to Indonesia because the girlfriend's family follows the tradition of "siri," which purportedly requires the family to kill Tumundo because his refusal to convert to Islam and marry the girlfriend shamed her family. He noted that he could not obtain protection from the Indonesian police force because it respects the tradition of siri. Furthermore, he stated that he would not be able to relocate to another island in Indonesia because (1) the family would still find him; and (2) people in Indonesia do not like Christians.

The IJ appeared to find Tumundo's testimony credible, but nonetheless denied his requests for withholding of removal and relief under the CAT. As to his claim for withholding of removal, the IJ held that the events Tumundo described did not rise to the level of past persecution and were not on account of his race, religion, nationality, membership in a particular social group, or political opinion. The IJ further concluded that Tumundo failed to show that it was more likely than not that the girlfriend's family would target him upon his return to Indonesia. The IJ observed that many years had passed since the abduction and that there was no indication that the family had the "means or ability to extend [its] vendetta outside [its own] island." Additionally, the IJ found that the girlfriend's family is not a group the Indonesian government is unable or unwilling to control.

On appeal, the BIA agreed with the IJ's reasons for denying Tumundo's request for relief under the CAT. As for his claim for withholding of removal, the BIA agreed with the IJ's denial of relief but nonetheless conducted its own analysis. In rejecting Tumundo's request for withholding of removal, the BIA held that his abduction and the events that followed did not rise to the level of persecution, highlighting the fact that he had not sustained a serious injury. The BIA further concluded that Tumundo failed to show that the family would likely persecute him if he returned to Indonesia. The BIA reasoned that even if the family were still interested in targeting him all these years later, Tumundo had "failed to establish that he could not reasonably avoid the threat of future persecution by relocating within Indonesia." Moreover, the BIA noted that Tumundo had never sought protection from the Indonesian government, nor had he submitted sufficient evidence in support of his

contention that the Indonesian police would be unwilling to protect him because it respects the tradition of siri. Finally, the BIA rejected Tumundo's argument that there is a pattern or practice of persecution against Christians in Indonesia. Tumundo now petitions this Court to review the BIA's decision.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Tumundo challenges only the denial of his request for withholding of removal.[1] Because the BIA issued its own decision, we review its decision rather than the IJ's decision. *See Wong v. Att'y Gen. of the U.S.*, 539 F.3d 225, 230 (3d Cir.2008). We review the BIA's factual findings— including its conclusions regarding evidence of persecution—for substantial evidence. *Id.* Under this deferential standard of review, we must uphold the BIA's findings "unless the evidence not only supports a contrary conclusion, but compels it." *Id.* (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir.2001)).

To be entitled to withholding of removal under 8 U.S.C. § 1231(b)(3), an applicant must show that it is more likely than not that he would face persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion if he returned to his country of origin. *See Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir.2003). "[V]iolence or other harm perpetrated by civilians against [an applicant] ... does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir.2005) (internal quotations omitted).

Substantial evidence supports the BIA's determination that Tumundo did not establish that it is more likely than not that he would face persecution if he returned to Indonesia. Tumundo's claim of individualized persecution fails because he did not show that the Indonesian government was or would be unable or unwilling to control the conduct of the girlfriend's family. Indeed, there is no evidence that he even sought protection from the Indonesian government. Although he claimed that such an attempt would be futile because the Indonesian police respects the tradition of siri, he did not substantiate this claim.

As for his claim that there is a pattern or practice of persecution of Christians in Indonesia, we recently rejected this argument in *Wong.* In that case, we concluded that the record, which included the 2003 and 2004 U.S. State Department reports on Indonesia, did not compel a finding that there is a pattern or practice of persecution against Chinese Christians in Indonesia. *See Wong*, 539 F.3d at 233–35. Although not relevant to the decision in that case, we also noted that the 2005 to 2007 country reports documented "improved treatment of Chinese Christians in Indonesia." *Id.* at 234. Here, Tumundo relies on the 2003 and 2005 country reports, as well as several articles from 2004 and earlier. We cannot conclude that this evidence compels a finding that there is a pattern or practice of persecution of Christians in Indonesia.

In light of the above, we will deny Tumundo's petition for review.

---

1. Because Tumundo's brief does not contest the BIA's rejection of his request for relief under the CAT, he has waived this issue. *See*

*Voci v. Gonzales*, 409 F.3d 607, 610 n. 1 (3d Cir.2005).