**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4610
_____

SURYO NAGAUTAMA,
                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                            Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A096-204-906)
Immigration Judge: Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 13, 2010

Before:  AMBRO, CHAGARES and ALDISERT, Circuit Judges

(filed: October 18, 2010 )

_____

OPINION
_____

PER CURIAM

    Petitioner Suryo Nagautama, a native and ethnic Chinese Christian citizen of

Indonesia, filed a timely petition for review from the Board of Immigration Appeals'

("BIA") final order of removal.  For the following reasons, we will deny the petition for

review.

Nagautama is a citizen of Indonesia who arrived in the United States in 1995 on a B-2 visa. He was placed in removal proceedings for overstaying his visa in 2003. In 2004, he conceded removability, and applied for asylum, withholding of removal, and for relief under the Convention Against Torture ("CAT"), claiming that he was persecuted for his Chinese ethnicity and Catholic religion.

Nagautama's testimony and personal statement described generally that he was bullied and harassed by Muslims in his community. He said that Indonesian Muslim youth "always call me names, 'Chinese, Chinese, go back to your country.'" (A.R. at 125-26 & 129.) He also testified that they would demand money from him "[e]very time we would go to attend church," almost every week, and that sometimes he would defend himself from their attempts to take money from his person, in which he incurred minor injuries. (Id. at 129.) He did not report these incidents to the police but he did report them to the church organization. (Id. at 128.) He feared returning to Indonesia because he would be targeted by Muslim youth as a wealthy person who traveled to the United States. (Id. at 129-30.) He also feared returning to Indonesia because of the recent bombings that had occurred in "churches, malls and foreign embassies" there. (Id. at 131.) His father, a Buddhist, and his mother and sister, practicing Catholics who attend church every Sunday, remain in Indonesia where they own and operate a grocery store. (Id. at 132.) Among other things, Nagautama submitted the United States Department of

2

State's 2003 and 2004 Country Reports on Human Rights Practices in Indonesia.

After a hearing in 2006, the Immigration Judge ("IJ") denied relief, finding that the asylum application was untimely and that Nagautama failed to meet his respective burdens of proof for withholding of removal and for CAT relief. In November 2009, the Board of Immigration Appeals ("BIA") dismissed Nagautama's appeal,[1] agreeing with the IJ's decision to pretermit the asylum petition as untimely. (App. at 21.) The Board affirmed the IJ's denial of withholding of removal because Nagautama failed to demonstrate past persecution or a clear probability of future persecution if he returned. (Id.) The BIA held that although the acts of Muslim Indonesians in asking Nagautama repeatedly for money and robbing him on several occasions might amount to discrimination or harassment, these acts did not constitute "past persecution." (Id. at 22.) The Board rejected Nagautama's claim that the IJ ignored the conditions in Indonesia as presented in the State Department Reports of record, and it found that Nagautama's fear of general conditions of violence and unrest affecting the entire populace in Indonesia did not amount to a well-founded fear of future harm. (Id.) The Board also denied CAT relief, holding that Nagautama failed to meet his burden of proof. (Id.) Through counsel, Nagautama filed this petition for review.

No court shall have jurisdiction to review any determination regarding the

---

[1] On February 13, 2008, the BIA granted Nagautama's motion to reopen the appeal, which the Board had dismissed in July 2007 because there was no notice of appeal in the record.

3

timeliness of an asylum application and the applicability of the exceptions. See 8 U.S.C. §1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). Although the subsequently enacted REAL ID Act amended the Immigration and Nationality Act to allow constitutional claims or questions of law to survive its jurisdiction-stripping provisions, see REAL ID Act § 106(a)(1)(A)(iii), 8 U.S.C. § 1252(a)(2)(D), Nagautama has not raised any legal or constitutional claims regarding the IJ's determination that his asylum claim was untimely. Because we lack jurisdiction to consider whether Nagautama's asylum application was timely, our review is confined to consideration of whether the BIA properly affirmed the denial of withholding of removal.[2]

To be eligible for withholding of removal, Nagautama must demonstrate that it is more likely than not that his life would be threatened in Indonesia on account of race, religion, nationality, membership in a particular social group, or political opinion. Tarrawally, 338 F.3d at 186; 8 U.S.C. § 1231(b)(3)(A). We may reverse the BIA's decision only if the record would compel a reasonable factfinder to conclude that the requisite fear existed. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Nagautama argues that the Board erred in finding that the record evidence failed to show a pattern or practice of persecution. We have held that in order to constitute a

_____

[2] Nagautama's brief contains a statement in the "Conclusion" that this Court should reverse the Board's denial of his CAT claim, but it contains no argument concerning relief under the CAT. Such a statement is not sufficient to bring the issue before the Court, and we deem the issue waived. De Araujo v. Gonzales, 457 F.3d 146, 153 (1st Cir. 2006); Voci v. Gonzales, 409 F.3d 607, 610 n.1 (3d Cir. 2005).

"pattern or practice," the persecution of a group must be "systemic, pervasive, or organized." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). In Wong v. Attorney General, 539 F.3d 225 (3d Cir. 2008), we held that the 2003 and 2004 Country Reports regarding Indonesia did not demonstrate a pattern or practice of persecution against Chinese Christians. Id. at 233. We noted that the 2005 and 2007 Country Reports documented improved treatment of Chinese Christians in Indonesia. Id. at 234. Here, Nagautama relies on largely out-dated Country Reports on Indonesia for 2000, 2001, and 2002, and he fails to address the information documented in the 2004 Country Report.[3] Given the lack of evidence showing the Indonesian government's action or acquiescence in Nagautama's case, we are not compelled to conclude that the discrimination and harassment he suffered constituted a pattern or practice of persecution.[4]

Nagautama argues that the Board erroneously failed to apply the "disfavored group analysis" set forth in Sael v. Ashcroft, 386 F.3d 922 (9th Cir. 2004), in determining whether he showed a pattern or practice of past persecution. We soundly rejected the

---

[3] Nagautama also broadly asserts that the IJ erred "by overlooking critical evidence," but he did not include any argument to support it.

[4] To the extent that Nagautama argues that he suffered past persecution on account of his Chinese ethnicity and his Christian religion when he was robbed, when his store was targeted for attack, and when people yelled "Kill Chinese" at him and threw stones, we conclude that he has not shown that the record compels a finding that he suffered past persecution, as opposed to discrimination or harassment, on account of his ethnicity or religion. Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993) ("persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional").

"disfavored group" analysis in <u>Lie</u>, 396 F.3d at 538 n.4.  <u>See also</u> <u>Wong</u>, 539 F.3d at 235 n.5 (noting that the Ninth Circuit Court of Appeals "appears to have moved away from its reasoning in <u>Sael</u>").  Nagautama also asserts that the Board should have followed the decision in <u>Eduard v. Ashcroft</u>, 379 F.3d 182 (5th Cir. 2004), where the Court found a pattern or practice of persecution of Chinese Christians in Indonesia.  We disagree.  In <u>Wong</u>, we examined <u>Eduard</u> and concluded that the decision was not persuasive regarding conditions in Indonesia as reflected in later (2004) reports because it was based on out-dated country conditions in 2000.  <u>Wong</u>, 539 F.3d at 234-35.

We conclude that Nagautama has not shown that the record compels a finding that his life would be threatened if removed to Indonesia so as to entitle him to withholding of removal.  <u>Tarrawally</u>, 338 F.3d at 186.  Accordingly, we will deny the petition for review.