NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3046
_____

MUSTAFA BAL,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA No. A076-141-648)
U.S. Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 4, 2011

Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges

(Filed: January 6, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Mustafa Bal petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the reasons that follow, we will deny the petition.

I.

Bal, a native and citizen of Turkey, entered the United States on a 29-day crewman's visa in October 2000; he has remained in this country ever since. In November 2007, the Department of Homeland Security initiated removal proceedings against him, charging him with being removable for having overstayed his visa. Bal conceded his removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He subsequently withdrew his request for asylum on account of it being untimely.

In August 2008, the Immigration Judge ("IJ") held a hearing on the merits of Bal's application. Bal and his wife, Emine, who was visiting from Turkey, testified at the hearing. According to their testimony, the couple met in Turkey in 1996. In 1997, his parents, acting on his behalf, approached her parents to ask for her hand in marriage. Emine's parents did not want their daughter to marry Bal, so they requested a large dowry that they knew Bal would be unable to pay and forbid Emine to speak to him again. In February 1998, Bal and Emine ran away together and married shortly thereafter.

While in hiding, Bal received threatening phone calls from Emine's family. Bal testified that he did not report these threats to the police because Emine's family was "very influential." In September 1998, two of Emine's brothers and three of their friends attacked Bal and Emine in a local market. Emine, who was pregnant at the time, was slapped and hit. When Bal tried to defend her, the attackers beat him until bystanders

2

intervened.  Neither Bal nor Emine sought medical attention after the incident.  And, as before, they did not report the incident to the police, fearing that if they did Emine's family would learn where they were living.

In June 2000, Bal was walking on a sidewalk in his home city when he was nearly hit by a car driven by Emine's cousin.  After this incident, Bal decided that he had to leave Turkey and joined a shipping crew.  Emine and the couple's daughter remained in Turkey, and Emine testified that they had not been harmed since Bal left.  She further testified that her family still talked about killing Bal if he returned to Turkey because, to her family, it was "a matter of honor."

After hearing the testimony, the IJ denied Bal's application.  In rejecting Bal's claim for withholding of removal, the IJ concluded that Bal did not qualify as a refugee under the Immigration and Nationality Act ("INA") because his proposed particular social group was defined by his alleged persecution and, thus, was not viable.  As for Bal's CAT claim, the IJ held that Bal had failed to satisfy the standard for that relief.

On appeal, the BIA adopted and affirmed the IJ's decision.  In doing so, the BIA concluded that the IJ "correctly found that [Bal] established neither past persecution nor a likelihood of future persecution from his wife's family due to his alleged membership in a 'particular social group' or any other of the grounds enumerated under section 101(a)(42)(A) of the [INA]."  (A.R. at 3).  The BIA held that "[t]he threats, single beating, and car incident enumerated by [Bal] did not rise to the level of persecution," and that his "failure to demonstrate the inability or unwillingness of his government to

protect him from his wife's family members is a sufficient basis for denying his application for withholding of removal." (Id. at 4.) The BIA also concluded that Bal had not demonstrated that he would likely be tortured upon returning to Turkey, noting that the record did not provide sufficient evidence from which to infer that "the Turkish government would fail to act in any way to either protect [Bal] or to punish anyone who might seek to harm him based on 'family honor.'" (Id.) Bal now seeks review of the BIA's decision.

## II.

We have jurisdiction over Bal's petition pursuant to 8 U.S.C. § 1252(a)(1). We review the agency's factual findings, including its conclusions regarding evidence of persecution, for substantial evidence, see Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006), and must uphold those findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). Because Bal's brief does not challenge the agency's denial of his CAT claim, we will limit our review to the agency's denial of his claim for withholding of removal. See Voci v. Gonzales, 409 F.3d 607, 610 n.1 (3d Cir. 2005).

To obtain withholding of removal, an alien must establish that it is more likely than not that his life or freedom would be threatened in the country of removal on account of his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A); Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003). To make this showing, the alien must demonstrate past persecution

4

(which creates a rebuttable presumption of future persecution) or a likelihood of future persecution. See 8 C.F.R. § 208.16(b). "Persecution" consists of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). "[V]iolence or other harm perpetrated by civilians . . . does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks and citation omitted).

In this case, the BIA did not err in upholding the IJ's denial of Bal's claim for withholding of removal, for Bal has not shown that the record compels a finding of past persecution or a likelihood of future persecution.[1] With respect to his claim for past persecution, we agree with the BIA that the incidents in question did not rise to the level of persecution. Bal does not allege that he was seriously injured during the altercation in 1998, nor did he suffer any injuries from the car incident in 2000. Additionally, he has not shown that Emine's family otherwise attempted to carry out threats made against him, or that any unfulfilled threats were of a sufficiently "imminent and menacing nature" to constitute persecution. See Li v. Att'y Gen. of the U.S., 400 F.3d 157, 164 (3d Cir. 2005).

---

[1] Because we reach this conclusion, we need not address Bal's argument that the agency erred in concluding that he had not established that he was a member of a viable particular social group under the INA.

5

As for his claim of future persecution, the record does not compel a finding that the Turkish government would be unable or unwilling to protect him from future harm. According to the U.S. State Department's 2007 Country Report on Human Rights Practices in Turkey, "honor killings" are prohibited under Turkish law, and violators are subject to life imprisonment. (See A.R. at 250.) Although Emine's family may have some unspecified influence in Turkey, Bal has not identified any evidence indicating that the Turkish police would refuse to protect him if Emine's family tried to harm him.

In light of the above, we will deny Bal's petition for review.