**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3016
_____

DIABATE MOUSSA,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A090-347-275)
Immigration Judge:  Honorable Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2012

Before:  RENDELL, VANASKIE  and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 5, 2012)
_____

OPINION
_____

PER CURIAM

    Diabate Moussa appeals from the order of the Board of Immigration Appeals

("BIA") dismissing his appeal and upholding the decision of the Immigration Judge

1

("IJ"), which denied Moussa's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

I

Moussa, a citizen of the Ivory Coast, entered the United States using someone else's passport on an unknown date, although he alleged before the IJ that he arrived in the United States in February 2006. He was served with a notice to appear and, before the IJ, conceded the charge of removability, but sought relief in the form of asylum, withholding of removal, and CAT protection.

In support of his claims for relief, Moussa testified that he is a Muslim, that he is of the Dioula ethnic group, and that he is a known supporter of the Rally of the Republicans ("RDR") party, which opposed President Laurent Gbagbo, who was in office during the relevant time period. Moussa explained that he served as treasurer for Mamayah, a social organization that helps Dioula people, and that he worked as a bus driver, often using his bus to transport RDR members to events.

Moussa testified that when he and his wife were walking home one evening, they were stopped on the street by a truck filled with men in military-style dress. The men accosted Moussa and his wife, claiming that they knew them to be Dioulas and supporters of RDR and its leader, Ouattara. Moussa alleged that the men forced him and his wife into the truck, blindfolded them, and drove around for an indeterminate time while the men rounded up other Dioulas. Moussa explained that, during the ordeal, the

men in the truck physically abused the Dioulas, and that Moussa protested when he heard his wife complain that one of the men was touching her breasts. Moussa testified that, in response to his protest, one of the men shouted at him, hit him with a rifle butt, and stabbed him in the leg. Eventually, the truck stopped and the men threw the Dioula passengers out, threatening to kill them. Moussa testified that he and his wife ran away, but that he could not keep up with her because of his wounded leg. He explained that he never saw her again, and that when he made it back to his house, it was deserted. Moussa testified that he took some money from the house and fled to Guinea, where he received assistance from a family friend to travel to the United States.

Moussa never sought treatment for his injured leg, although he did submit an evaluation from a doctor in the United States explaining that Moussa has a scar on his leg consistent with the stabbing he described. He also submitted a letter from his friend -- written sometime before September 2008 -- indicating that he should not return to the Ivory Coast because security forces were looking for him. On cross-examination, Moussa admitted that he stopped paying attention to Ivory Coast politics when he came to the United States, and he was therefore not aware if he would face problems because of his political affiliation if he returned to the Ivory Coast.

The IJ held that Moussa failed to demonstrate the date on which he entered the United States, and that he therefore could not demonstrate that his asylum application was filed within one year of his arrival. Accordingly, the IJ pretermitted Moussa's asylum application. The IJ also held that Moussa's account of his wife's disappearance

3

was incredible and that he had failed to corroborate his testimony regarding the persecution of Dioulas, Muslims, or RDR supporters. Finally, the IJ concluded that even if Moussa's account of his abduction and assault was true, it did not rise to the level of persecution for the purpose of demonstrating his entitlement to withholding and CAT protection, and he had not demonstrated a likelihood of future persecution or torture. The IJ therefore denied relief under those provisions, but granted Moussa's request for voluntary departure.

The BIA dismissed Moussa's appeal, reasoning that the IJ correctly pretermitted the asylum application and that, assuming Moussa testified credibly, he failed to demonstrate that the harm he suffered amounted to past persecution or that he faces a likelihood of persecution or torture if he returns to the Ivory Coast. Moussa timely petitioned for review of the BIA's decision.

II

As a threshold matter, an alien seeking asylum must prove by clear and convincing evidence that he filed his application for asylum within one year of arriving in the United States. See 8 U.S.C. § 1158(a)(2)(B). An immigration court may consider an untimely asylum application only if the alien demonstrates changed circumstances that impact his eligibility for asylum or extraordinary circumstances why he did not meet the one-year deadline. § 1158(a)(2)(D). However, "[n]o court shall have jurisdiction to review any determination by the Attorney General" that an asylum application was not timely filed. § 1158(a)(3); see Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). Because the

4

BIA and IJ held that Moussa failed to demonstrate by clear and convincing evidence that his asylum application was timely filed, we have no jurisdiction to review Moussa's claim for asylum. See § 1158(a)(3).

To the extent that Moussa petitions for review of the denial of his withholding of removal and CAT protection claims, we have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). The Agency's factual determinations are reviewed for substantial evidence, and will be upheld unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005).

In order to qualify for withholding of removal, a petitioner must demonstrate a clear probability, i.e., that it is more likely than not, that his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion if he returns to his country. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). An applicant can meet this standard by demonstrating past persecution, which creates a rebuttable presumption of future persecution, see 8 C.F.R. § 1208.16(b)(1), or by showing a clear probability of future persecution if the applicant is removed. See § 1208.16(b)(2). To qualify for relief under the CAT, a petitioner must show that "it is more likely than not that he or she would be tortured" if returned to the

5

designated country of removal.  <u>Zubeda</u>, 333 F.3d at 471.

Substantial evidence supports the BIA's determination that Moussa did not demonstrate past persecution.[1]  Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."  <u>Fatin v. INS</u>, 12 F.3d 1233, 1240 (3d Cir. 1993).  However, it "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional."  <u>Id.</u>  Generally, "isolated incidents that do not result in serious injury do not rise to the level of persecution."  <u>Voci v. Gonzales</u>,  409 F.3d 607, 615 (3d Cir. 2005).  Although the treatment and physical injury Moussa endured was unfortunate, such treatment was not so clearly torturous or life-threatening that we are compelled to disagree with the BIA's determination that it did not rise to the level of persecution, particularly given that Moussa never sought medical attention for his leg.

Likewise, we agree that the background evidence Moussa submitted in support of his claim did not demonstrate a clear probability that he would be persecuted or tortured based on his ethnicity, religion, or political beliefs.

Accordingly, we will deny the petition for review.

_____

[1] Although Moussa challenges in his brief the IJ's narrow adverse credibility determination, we need not address that argument because substantial evidence supports the BIA's determination that, assuming his credibility, Moussa failed to satisfy his burden of proof.  Indeed, because the BIA assumed Moussa's credibility for purposes of appeal, but did not otherwise address the IJ's adverse credibility determination, we are required to proceed under the assumption that Moussa testified credibly.  <u>See</u> <u>Kayembe v. Ashcroft</u>, 334 F.3d 231, 234-35 (3d Cir. 2003).