**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3051

_____

HUA ZHENG; XUEFENG JIN,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
BIA No. A205-183-109 & A205-183-110
(U.S. Immigration Judge: Amit Chugh)

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 20, 2021

(Filed: April 30, 2021)

Before:  AMBRO, RESTREPO and RENDELL, *Circuit Judges*.

_____

O P I N I O N*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Petitioners Hua Zheng and her husband, Xuefeng Jin,[1] seek review of the Board of Immigration Appeals' (BIA) decision to affirm the denial of their applications for asylum and withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and protection under the Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16(c), 1208.18. Zheng, a citizen of the People's Republic of China, claimed she was persecuted for her Christian beliefs while in China and feared future persecution if removed. In denying her application, the Immigration Judge (IJ) found Zheng's alleged mistreatment did not constitute past persecution under the INA and, therefore, Zheng failed to meet her burden of showing her eligibility for asylum. Zheng appealed and the BIA affirmed. Zheng filed this timely petition for review. We will deny the petition.

## I.

In late 2011, Zheng and Jin were admitted to the United States on visitor visas. They overstayed their visas. In 2013, the Department of Homeland Security charged them with removability. Zheng conceded her removability, but filed an application for asylum, withholding of removal, and protection under CAT.

---

[1] Jin claims no independent basis for asylum relief. Instead, he seeks relief as a "derivative beneficiary" or "rider applicant" based on Zheng's application under 8 U.S.C. § 1158. Section 1158 provides that "[a] spouse . . . of an alien who is granted asylum . . . may, if not otherwise eligible for asylum . . . , be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158. For ease of analysis, we address both Zheng's and Jin's petitions for review collectively and refer to the petitions in the singular because the success of Jin's application depends upon the success of Zheng's and because both cases were handled in a consolidated hearing and appeal.

According to Zheng, she came to the United States to escape religious persecution in China based on her Christian beliefs. In 2010, Zheng began practicing Christianity and joined a church. In June of 2011, six police officers raided the church, arrested Zheng and five fellow congregants, and charged them with holding and conspiring to hold illegal, anti-government gatherings and activities. She was detained at a local police station for three days. During her detention, a female officer attempted to coerce a confession from Zheng by beating her. The alleged beatings consisted of the officer slapping, kicking, and hitting Zheng with a baton.

Ultimately, the police released Zheng after her family posted bail of 4200 RMB or approximately $650 USD. As a condition of her release, Zheng agreed to cease her activities and regularly report to the police for supervision. Despite her beatings, Zheng never sought medical treatment during or after her release from detention. Other than this incident, she alleges no other instances of mistreatment because of her religious affiliation. After her detention, but before entering the United States, Zheng traveled to Japan but had not at that time "decided to run away from China." App. 17.

Upon consideration of Zheng's allegations and after a hearing on the merits, the IJ denied Zheng any relief. The IJ found Zheng failed to establish her eligibility for asylum because her alleged mistreatment did not amount to past persecution and she failed to demonstrate a well-founded fear of future persecution.

First, the IJ found that Zheng's mistreatment did not constitute past persecution because it was, at most, a "single encounter with Chinese authorities" that "did not result in any permanent or significant injury" and did not "necessitate [Zheng] to seek any

3

medical treatment." App. 18–19. The IJ emphasized that relief based on persecution under the INA requires "significantly more than the type of abuse claimed by [Zheng]." App. 19.

Second, the IJ found that Zheng failed to establish that she had a well-founded fear of future persecution. In so finding, the IJ focused on the Zheng's failure to produce credible evidence to support her claim. Among other things, the IJ noted that Zheng failed to obtain any testimony or an affidavit from witnesses. She failed to produce the receipt she received for the 4200 RMB her family paid as bail to secure her release. In addition, she failed to produce a copy of the written conditions of her probation that the Chinese authorities gave to her upon her release from detention. She also failed to produce evidence that her relatives who remained in China, including her parents and her child, have been threatened or abused by Chinese authorities because of their affiliation with her. Thus, the IJ found she failed to show that there was a "reasonable possibility that she would be persecuted . . . if returned to China." App. 20.

The IJ also denied Zheng's application for withholding of removal under the INA and CAT. Noting that an application for withholding of removal under the INA carries a heavier burden of proof than the burden of proving eligibility for asylum, the IJ concluded that because Zheng failed to meet her burden for the asylum claim, "it is necessarily the case that she has failed to meet her burden of proof for . . . withholding removal." App. 20. The IJ then denied Zheng's application for withholding removal under CAT because she failed to show her mistreatment constituted "torture." The IJ noted that while Zheng did present evidence of difficult country conditions, such

4

evidence, standing alone, was insufficient to meet her burden of proving that she would be tortured if returned to China.

Zheng appealed to the BIA. She argued that the IJ erred in finding her prior mistreatment did not amount to past persecution under the INA.[2] The BIA dismissed the appeal and agreed with the IJ's determination that Zheng failed to demonstrate past persecution. Following the BIA's dismissal, Zheng timely petitioned this Court for review.

## II.

This Court has jurisdiction to review final orders of removal from the BIA under 8 U.S.C. § 1252(a). Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). Unless the agency's factual findings are based on a misunderstanding of law, this Court reviews factual findings, such as the existence of past persecution, under the substantial evidence standard. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001); see also Huang, 620 F.3d at 387. Under this standard, the Court will uphold the BIA's finding "unless the evidence not only supports a contrary conclusion, but compels it." Abdille, 242 F.3d at 484.

---

[2] As the BIA noted, in challenging the past persecution determination only, Zheng effectively "waived [the] appeal of all other aspects of the [IJ's] decision." App. 11. On appeal to this Court, Zheng again argues only that the IJ and BIA erred as to the past persecution finding. Therefore, we consider her challenge of the BIA's decision on her claim of past persecution only.

## III.

To establish eligibility for asylum, an applicant must show she is a "refugee." Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003). The INA defines the term "refugee" as "any person who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101, 1158 (2018). To establish that an applicant is a refugee based on past persecution, the applicant, "must show (i) that he was targeted for mistreatment 'on account of one of the statutorily-protected grounds,' (ii) that the 'incident, or incidents' of mistreatment 'rise to the level of persecution,' and (iii) that the persecution was 'committed by the government or forces the government is either unable or unwilling to control.'" Doe v. Att'y Gen., 956 F.3d 135, 141–42 (3d Cir. 2020) (quoting Abdulrahman, 330 F.3d at 592). This petition involves only the second prong of the persecution standard.

It is well established that "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993). Rather, persecution refers only to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." Id. Isolated incidents of mistreatment that do not result in serious injury typically will not amount to persecution under the INA. Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005); see also Kibinda v. Att'y Gen., 477 F.3d 113, 119–20 (3d Cir. 2007) (declining to find past persecution where petitioner's only alleged mistreatment was a five-day detention resulting in an injury requiring a few stitches).

On appeal, Zheng argues the mistreatment she experienced rises to the level of past persecution, and that the beatings she received over her three-day detention each constituted a separate incident of mistreatment and, thus, evidenced a pattern of mistreatment and demonstrates a history of past persecution. We disagree. Instead, we conclude that the agency's finding that Zheng has not suffered past persecution is supported by substantial evidence.

We note, as the IJ and BIA did, that the alleged police beatings arose from a single encounter with the authorities that did not result in any serious injury. Typically, single instances of mistreatment that do not result in serious injury do not meet the definition of past persecution. See, e.g., Voci, 409 F.3d at 615. Zheng also failed to present evidence that she faced a serious threat to her life or freedom. Indeed, she admitted that her family successfully secured her release from detention despite the authorities' initial confiscation of her cell phone and keys, in an apparent attempt to prevent her from contacting her family, by posting bail of approximately $650 USD. We conclude that these facts, among others, support the agency's finding that Zheng's alleged mistreatment did not amount to past persecution. The agency's findings are supported by substantial evidence.

Although Zheng relies heavily on this Court's decisions in Chavarria v. Gonzales, 446 F.3d 508, 518 (3d Cir. 2006), and Herrera-Reyes v. Att'y Gen., 952 F.3d 101 (3d Cir. 2020), both cases are inapposite.

In Chavarria, we concluded that an asylum seeker established a well-founded fear of future persecution. The asylum seeker presented evidence that he was persecuted and would be persecuted based on his having been a witness to paramilitary operatives'

sexual assault and intimidation of two human rights workers. 446 F.3d at 513. After the attack, the asylum seeker covered the naked bodies of the workers and escorted them to safety. Id. Days later, he learned that the same paramilitary operatives had been circling his home. Id. Then, while driving on another night, a car forced him off the road. Id. Armed men exited the car and placed a gun to his head and a gun to his stomach. Id. The men told him that "if we ever see you again, you're not going to even live to tell the story." Id. at 514.

In Herrera-Reyes, the asylum seeker was the president of a local government opposition group. 952 F.3d at 104. She was threatened by the ruling government group over a period of months. Id. First, she was threatened by armed government agents who said they would "kill" or "steal" from her and the other members of the opposition party working inside a local polling location. Id. Then, armed government agents burned down her family's home after the candidate she supported for local office won an election. Id. Armed agents then attacked her and other opposition party workers who were preparing an inauguration ceremony for their victorious candidate and stole the workers' computers and other audio equipment at gunpoint. Id. Later, still more armed agents also approached the asylum seeker while she was shopping at a supermarket and told her she should "be thankful [that] there were many people there" because they "would kill her if they found her alone." Id. On those facts, we concluded that the asylum seeker established her eligibility for asylum for past persecution. Id. at 112.

Here, Zheng principally alleges she was beaten in connection with a three-day detention by local Chinese police. She did not require, nor did she seek medical

8

treatment.  After the encounter, she was never, herself, approached by the police again. While the police asked her family about Zheng's whereabouts approximately two weeks after she and her husband left for the United States, Zheng offered no evidence that the police harassed or threatened her family.  Thus, in contrast to the asylum seekers in Chavarria and Herrera-Reyes, who established an extensive pattern of mistreatment, Zheng has not presented evidence of such a pattern.  Instead, we uphold the agency's finding that Zheng's mistreatment did not constitute past persecution as supported by substantial evidence.

IV.

For these reasons we will deny Zheng's petition for review.