NON-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3470
_____

DARLYN JOSUE MASS-MONTENEGRO,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                                    Respondent
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(BIA-1 : A206-880-066)
Immigration Judge: D'Anna H. Freeman

Submitted under Third Circuit LAR 34.1(a)
on September 21, 2021

Before: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*.


(Filed: September 22, 2021)
_____


OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Darlyn Josue Mass-Montenegro petitions for review of a final order of removal issued by the Board of Immigration Appeals. Because we perceive no error in the Board's decision denying Mass-Montenegro withholding of removal and protection under the Convention Against Torture, we will deny the petition.

I

In late 2014, Mass Montenegro was removed to his native Honduras after he was apprehended trying to enter the United States illegally "[t]o reside and seek employment in Los Angeles." AR 443. When he was again caught trying to illegally enter the United States in early 2019, he expressed a fear of persecution or torture if returned to Honduras. After a hearing, an immigration judge found no past persecution, no likelihood of future persecution, and no likelihood of torture. So the IJ denied Mass-Montenegro's petition for withholding of removal and for protection under the Convention Against Torture (CAT). The BIA affirmed, and Mass-Montenegro filed this timely petition for review.

II

Soon after his 2014 removal to Honduras, Mass-Montenegro began volunteering for the country's National Party. He was eventually hired to work part-time under President Hernandez's Secretary of Culture and Arts. His duties included organizing cultural events, distributing food, and stage assembly.

Mass-Montenegro's feelings towards President Hernandez and the National Party soured following Honduras's 2017 election. Shortly after the election, his boss asked him to help the government infiltrate nationwide protests against President Hernandez. The

2

goal, according to Mass-Montenegro, was to cause violence and destruction to sway public opinion in the government's favor. When he refused, his boss threatened to fire him and warned him of "dire consequences." AR 106. Still, Mass-Montenegro continued to work without incident for months after this first altercation. Several months later, he ran into his boss, who "tugged [him] by the shirt," called him a dog and a traitor, then threatened to kill him. AR 105–07. Mass-Montenegro quit after this second run-in.

The day after he quit, four military police officers accosted Mass-Montenegro in front of his home. He recognized one of the attackers as his former boss's friend. After confirming Mass-Montenegro was "the traitor," AR 110, the officers beat him for 20 to 25 seconds. One of the officers knocked him to his knees by hitting him in the stomach with the butt of a rifle. While Mass-Montenegro was down, the officers struck him with batons, kicked him, and insulted him. They also said they were going to break every bone in his body, kill him, and dump him elsewhere. But the attackers did not fulfill their threats. When a lookout signaled someone was coming, Mass-Montenegro "took advantage of the situation" to escape into his house. AR 111. He drove himself to the hospital ten or fifteen minutes away where he spent a couple hours before being prescribed pain relievers and four days' bedrest. Roughly two weeks later, Mass-Montenegro left Honduras.

### III

We have jurisdiction over the BIA's final removal order under 8 U.S.C. § 1252(a)(1). We apply the deferential substantial evidence standard to the agency's

3

findings of fact but review legal conclusions and applications of law to fact de novo. *Yusupov v. Att'y Gen.*, 650 F.3d 968, 977 (3d Cir. 2011).

The BIA agreed with the IJ that Mass-Montenegro failed to show past persecution. The BIA held that the IJ's factual finding that the beating Mass-Montenegro suffered was not severe was not clearly erroneous. AR 3-4. After it took into account the attack and the prior threats from Mass-Montenegro's boss, the BIA decided he had not shown mistreatment rising to the level of past persecution. And because Mass-Montenegro did not demonstrate past persecution or offer any evidence that his attackers were still interested in pursuing him back in Honduras, the BIA concluded he failed to show a likelihood of future persecution. Moving to his CAT claim, the BIA held Mass-Montenegro's past mistreatment did not rise to the level of torture and he had not shown an inability to relocate within Honduras to avoid any future harm. We find no error in the BIA's determinations.

Persecution is an "extreme concept." *Fatin v. I.N.S.*, 12 F.3d 1233, 1243 (3d Cir. 1993). For death threats to constitute persecution, they must be so "concrete and menacing" that they pose a "severe affront to the petitioner's life or freedom." *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 108 (3d Cir. 2020) (cleaned up) (quoting *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 341 (3d Cir. 2008)). This is a high bar for petitioners seeking withholding of removal. Here, we agree with the agency that, even accepting Mass-Montenegro's factual account of his altercations with his boss and the military police officers, those interactions did not rise to the level of persecution.

The primary incident relating to Mass-Montenegro's withholding claim is the 25-second attack by the military police officers. But as this Court has noted, "isolated incidents that do not result in serious injury do not rise to the level of persecution." *Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005). The IJ concluded this attack "was [not] severe enough to rise to the level of persecution" because Mass-Montenegro "could immediately get up off the ground and run into his house and then drive himself to a doctor where he received treatment for only two hours and then returned home," AR 74. The BIA held that finding was not clearly erroneous. We agree because that finding is supported by Mass-Montenegro's own testimony about the attack and his treatment.

Instead, Mass-Montenegro tries to paint a pattern of mistreatment that gives rise to persecution. But we find no past persecution even after considering Mass-Montenegro's two rows with his boss. The first altercation amounted to only a vague warning of "dire consequences." Mass-Montenegro was undeterred and continued working under the same boss for several months, which undermines his claim of persecution. And although Mass-Montenegro quit after the next clash with his boss, the insults and shirt tugging did not pose a "severe affront to his life or freedom." *Gomez-Zuluaga*, 527 F.3d at 341 (cleaned up).

Mass-Montenegro relies on broad readings of our caselaw to support his position. But this case is distinguishable from other cases where we found death threats amounting to persecution. In *Herrera-Reyes*, the petitioner's persecutors burned down her home just a few hours after threatening to kill her. 952 F.3d at 104. The next day, the petitioner's travel companion was shot and killed when her persecutors attacked her convoy. *Id.* In

5

*Doe v. Attorney General*, the petitioner was attacked by a mob and doused in kerosene as the crowd debated whether to set him on fire or behead him. 956 F.3d 135, 139 (3d Cir. 2020). And in *Chavarria v. Gonzalez*, the petitioner was stopped in his car, robbed at gun point, and threatened with death if his persecutors caught him again. 446 F.3d 508, 513 (3d Cir. 2006). We held there that the BIA made several factual conclusions unsupported by the record that warranted reversal. But as Mass-Montenegro conceded, "[t]he facts in this case are not in dispute." Mass-Montenegro Opening Br. 3.

Mass-Montenegro also argues he is entitled to a presumption of future persecution because of his past mistreatment. Because he failed to show past persecution, he must prove it is more likely than not he would face persecution if returned to Honduras. 8 C.F.R. § 208.16(b)(2). But he offered no evidence showing his would-be persecutors maintained any interest in him. So the BIA did not err when it found Mass-Montenegro failed to meet this burden.

Nor did the BIA err when it denied Mass-Montenegro relief under the Convention Against Torture. For mistreatment to amount to torture it must be even more severe than persecution. *Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir. 2008). His inability to meet the persecution standard dooms his torture claim.

\*　　\*　　\*

For the reasons stated, we will deny the petition for review.

6